MOREY KAPLAN, Also Known as HAROLD HÀRTZ, Jr., Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 13068

June 9, 1983                                     663 P.2d 1190

*McDonald & Kafchinski,* Reno, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney; *Edward B. Horn* and *Michael L. Mahaffey,* Deputy District Attorneys, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Morey Kaplan was convicted after a jury trial of first-degree murder and sentenced to life imprisonment without

the possibility of parole. It appears, however, that the district court erred in admitting, over objection, prior inconsistent statements of a witness who did not testify at trial and was not available for cross-examination. Accordingly, as the admission of these hearsay statements prejudiced appellant's substantial rights, we reverse.

In February, 1976, Marjorie Carter and Raye Wood beat the victim, Peggy Davis, to death with a hammer in her Reno apartment. Carter subsequently pleaded guilty to second-degree murder pursuant to a plea bargain. Under the terms of this plea bargain, Carter testified before a grand jury and at trial that appellant had employed Carter and Wood to commit a "contract" killing of the victim in order to obtain the proceeds of the victim's life insurance policy, which named appellant as beneficiary. In contrast, appellant maintained that Carter had killed the victim as a result of racial animosity, and argued that Carter had invented the "contract" killing story implicating him in retaliation for appellant having fired Carter from a lucrative position as a bar manager.

Appellant was convicted of first-degree murder in 1979 after a jury trial. However, because of certain prejudicial statements made by the special prosecutor concerning appellant's prior criminal record which were published by the media, appellant was granted a new trial.[1] At appellant's second trial, conflicting evidence was presented to the jury, and it is uncontroverted that Carter, the only witness who directly linked appellant with the alleged "contract" to kill the victim, had changed her story in material respect several times. The jury indicated it had a very difficult time reaching a decision, and the trial court also characterized the case as involving very close evidence. Nonetheless, appellant was convicted of first-degree murder a second time, and sentenced to life imprisonment without the possibility of parole.

Although appellant raises numerous issues, we need discuss only one to dispose of this appeal. The issue in question arises out of the following factual setting. At trial, the prosecution attempted to establish that appellant had been involved in a prior bad act, a 1974 plot to kill his wife to gain the proceeds of her insurance policy.[2] As its initial witness the prosecution called Robert Maginnis, who allegedly had been involved in the

---

[1]After a new trial was granted, appellant unsuccessfully appealed from a district court order denying a motion for a change of venue. *See* Kaplan v. State, 96 Nev. 798, 618 P.2d 354 (1980).

[2]This evidence was apparently offered under the "motive, opportunity, intent" exception of NRS 48.045(2).

1974 plot. Maginnis refused to testify, and was adjudged in contempt of court.[3]

Maginnis had testified, however, at appellant's first trial. At the prosecution's request this earlier testimony was read to the jury. This prior testimony did little to incriminate appellant; Maginnis testified that he had never met appellant and knew nothing about any "contract" to kill appellant's wife. After this prior testimony was read to the jury, the prosecution called several police officers to testify as to prior inconsistent statements allegedly made by Maginnis at the time of the 1974 incident. The officers admitted they had made no records concerning prior statements by Maginnis. However, they claimed that they had advised Maginnis of an anonymous "tip" concerning a plot by appellant to kill his wife, and that Maginnis had stated the "tip" was "basically true."

The issue presented on appeal is whether, under this state's Evidence Code, a witness who does not testify at trial may be impeached with extrajudicial prior inconsistent statements. Before turning to this issue, we note that the testimony given by Maginnis in appellant's first trial was not subject to exclusion on hearsay grounds at appellant's second trial. Prior testimony is not inadmissible under the hearsay rule if the hearsay declarant is unavailable as a witness and the party against whom the former testimony is offered was a party or is in privity with one of the former parties and the issues are substantially the same. See NRS 51.325; see also LaPena v. State, 96 Nev. 43, 47, 604 P.2d 811 (1980). In turn, a hearsay declarant is unavailable as a witness if he is persistent in refusing to testify despite an order of a judge to do so. See NRS 51.055(1)(b); see also Sparkman v. State, 95 Nev. 76, 79-81, 590 P.2d 151 (1979). As appellant was a party to the earlier trial, in which the issues were obviously substantially the same, and as Maginnis was, through a refusal to testify, "unavailable," the introduction of the prior testimony did not violate the rule against hearsay.[4]

It is the admission of Maginnis's prior inconsistent statements, as related by the officers, which poses the difficulty in the instant case. Such prior inconsistent statements are normally admissible for purposes of impeachment over hearsay

---

[3]At the time of appellant's trial, Maginnis had been convicted of first-degree murder after an unrelated homicide which occurred in December, 1974. See Maginnis v. State, 93 Nev. 173, 561 P.2d 922 (1977).

[4]This is not to suggest, however, that Maginnis's prior testimony had sufficient relevance to justify its re-admission in the second trial.

objection where the declarant testifies and is available for cross-examination. Indeed, in a technical sense, such statements are not hearsay; NRS 51.035 provides in pertinent part:

> "Hearsay" means a statement offered in evidence to prove the truth of the matter asserted *unless:*
>
> . . . .
>
> 2. *The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement,* and the statement is:
> (a) *Inconsistent with his testimony;*
>
> . . . .

(Emphasis added.) Thus, under NRS 51.035, a statement which would otherwise be subject to exclusion on hearsay grounds is nonetheless admissible if two requirements are met: (1) the proffered statement is "inconsistent" with the declarant's testimony; and (2) the declarant "testifies at the trial or hearing and is subject to cross-examination concerning the statement."

In the instant case, Maginnis's prior statements to the officers were inconsistent with his testimony at appellant's first trial. Thus, one of the requirements of the prior inconsistent statement exception set forth in NRS 51.035 was met. However, the second requirement, that the declarant testifies at the trial or hearing and is subject to cross-examination, is clearly *not* met. As previously discussed, Maginnis refused to testify at the second trial, and thus was unavailable within the meaning of the Evidence Code. *See* NRS 51.055(1)(b). In fact, the admission of Maginnis's testimony from appellant's first trial was based on this "unavailability." Further, although Maginnis testified and was available for cross-examination during appellant's first trial, NRS 51.035 clearly requires that the hearsay declarant be available for cross-examination at "*the* trial or hearing" in which the prior inconsistent statement is offered. In the instant case, the prior inconsistent statements were offered during appellant's second trial. Thus, Maginnis would have had to testify at this second trial and be subject to cross-examination if his prior inconsistent statements were to be admitted into evidence.

Given that Maginnis, the hearsay declarant, did not testify and was thus not available for cross-examination at trial, the district court erred in admitting over hearsay objection Maginnis's prior inconsistent statements. There remains the question of whether the district court's error fatally infected appellant's trial. In Passarelli v. State, 93 Nev. 292, 564 P.2d

608 (1977), this court was presented with the very issue now raised by appellant, but found that the jury's verdict was supported by other overwhelming evidence of guilt and declined to reverse. In contrast, here the evidence of appellant's guilt cannot be characterized as overwhelming. The prosecution's case was based in large part on the testimony of Carter, an obvious psychopath and an admitted perjurer. There was no direct physical evidence which connected appellant with the crime, and the record indicates that the other principals in the killing operated at the direction of Carter, not appellant. It is apparent that Carter was prepared to tell any story the police would accept, in order to escape punishment for the killing she had perpetrated. When her early stories of Kaplan's presence at the murder were proved false, Carter substituted a scenario that cast Kaplan as having hired her to perform the killing in his absence. Further, the prosecution appears to have placed great weight on the extrajudicial statements of Maginnis, another murderer of dubious credibility. The first six witnesses called by the prosecution, and a total of nine of the forty-one witnesses called in the case-in-chief, were called to substantiate the 1974 prior bad act. If the statements required to substantiate the prior bad act are stricken as hearsay, it follows that a significant portion of the prosecution's case is eliminated. In light of the fact that both the district court judge and the jury felt the case against appellant was very close, we cannot say the evidence of appellant's guilt was so overwhelming that the district court's error did not prejudice appellant's substantial rights. *See* NRS 177.255.

Accordingly, we order the judgment reversed. We will not decide, at this juncture, whether other evidence against appellant would be sufficient to sustain a conviction. However, in the event the prosecution elects to seek a re-trial, the district court is directed to allow appellant to renew motions for change of venue and for bail.