KENNETH CHEATHAM, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 18261

September 21, 1988 761 P.2d 419

*David Parraguirre*, Public Defender, *David A. Cass*, Deputy
Public Defender, *Karen Grifall*, Deputy Public Defender,
Washoe County, for Appellant.

*Brian McKay*, Attorney General, Carson City; *Mills Lane*,
District Attorney, *Gary H. Hatlestad*, Deputy District Attorney,
Washoe County, for Respondent.

# OPINION

By the Court, SPRINGER, J.:

Kenneth Loranzo Cheatham, Jean McKinnis, Clinton Long, and Melvin Howard were accused of robbing and murdering a drug dealer named Melvin Douglas Arritt in McKinnis's hotel room at the Circus Circus Hotel and Casino in Reno, Nevada. McKinnis, Long and Howard all pleaded guilty to second degree murder. Cheatham proceeded to trial and was convicted by a jury of second degree murder.

Cheatham's principal claims of error are the following: (1) that the trial court erred in admitting hearsay statements by McKinnis; (2) that the trial court erred in admitting hearsay statements by Long; and (3) that the trial court erred by finding that there was sufficient evidence tending to connect Cheatham with the robbery and murder to corroborate the accomplice testimony against him.

Cheatham challenges the admission into evidence of a tape recording of a conversation between McKinnis and Long made while McKinnis and Long were incarcerated in the Santa Clara jail. The damaging portion of the conversation consists of the following question by McKinnis: "Did they get Cheats?"[1]

The trial court admitted the tape recording over hearsay objection on the ground that it contained statements consistent with McKinnis's trial testimony in which McKinnis implicated Cheatham in the robbery and murder of Arritt. Pursuant to NRS 51.035(2)(b), an out-of-court statement is not inadmissible as hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement and the statement is "[c]onsistent with his testimony and offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive." NRS 51.035(2)(b). Nevertheless, to be admissible under NRS 51.035(2)(b) the prior consistent statement must have been made at a time when the declarant had no motive to fabricate. Crew v. State, 100 Nev. 38, 675 P.2d 986 (1984); Daly v. State, 99 Nev. 564, 665 P.2d 798 (1983).

Cheatham's attack on the admissibility of the tape recorded statement is based solely on his claim that "Ms. McKinnis had every reason and every motive to fabricate." According to Cheatham, McKinnis was motivated to fabricate by reason of her

---

[1]It is undisputed that the "Cheats" referred to by McKinnis is the appellant, Kenneth Cheatham.

just having been arrested for the murder of Arritt. Being arrested for murder can certainly motivate one to lie, but McKinnis was not addressing her accusers. The intercepted tape recording was of a *sub rosa,* barely audible conversation between two persons, both accused of the same murder charge that Cheatham was facing and under circumstances in which neither party reasonably could have believed he or she was being overheard. The court can find no fault in the trial court's determination that under the described circumstances there was no apparent motive to fabricate on the part of either declarant and hold that the statement was properly admissible under NRS 51.035(2)(b).

Cheatham also challenges the admission into evidence of statements made by Long at Long's sentencing hearing. At Cheatham's trial, Long testified that Cheatham did not participate in the robbery and murder of Arritt. The trial court admitted transcripts of Long's sentencing hearing—which contained statements by Long implicating Cheatham in the robbery and murder of Arritt—on the ground that they were prior inconsistent statements.

Pursuant to NRS 51.035(2)(a), an out-of-court statement is not inadmissible as hearsay if the following two conditions are met: (1) the declarant testifies at trial and is subject to cross-examination concerning the statement; and (2) the out-of-court statement is inconsistent with the declarant's testimony. NRS 51.035(2)(a). Relying on Kaplan v. State, 99 Nev. 449, 633 P.2d 1190 (1983), Cheatham argues that Long's out-of-court statements were inadmissible because Long was in effect unavailable for cross-examination because of Long's persistence in refusing to testify about the statements and in refusing to acknowledge that he remembered the statements.[2]

Pursuant to NRS 51.055(1)(b), a declarant is unavailable as a witness if he is "[p]ersistent in refusing to testify despite an order of the judge to do so." NRS 51.055(1)(b). In *Kaplan,* the trial

---

[2]Cheatham similarly challenges the admission of Long's out-of-court statements on the ground that their admission violated Cheatham's constitutional right to confront a witness against him. We do not believe that Cheatham's rights under the confrontation clause were violated. Although Long claimed not to remember the out-of-court statements, he was nevertheless present at trial, under oath, and subject to full and effective cross-examination by the defense. See California v. Green, 399 U.S. 149, 162 (1970); Maginnis v. State, 93 Nev. 173, 561 P.2d 922 (1977). Moreover, we note that at trial Long testified favorably to Cheatham concerning the underlying facts. See Nelson v. O'Neil, 402 U.S. 622, 627-30 (1971); State v. Cripps, 582 P.2d 312 (Mont. 1978).

court allowed into evidence prior inconsistent out-of-court statements for impeachment purposes, pursuant to NRS 51.035(2)(a). Since the declarant refused to testify at trial, however, this court held in *Kaplan* that the declarant was unavailable as a witness pursuant to NRS 51.055(1)(b) and further held that because the declarant was unavailable as a witness—and thus not subject to cross-examination as required by NRS 51.035(2)(a)—the prior inconsistent statements were therefore inadmissible.

Under the circumstances of this case, Long cannot be said to have been unavailable for cross-examination. First, NRS 51.055(1)(b) does not apply to Long since he was not "persistent in refusing to testify *despite an order of the judge to do so.*" *See* NRS 51.055(1)(b) (emphasis supplied). Second, the present case is similarly distinguishable from *Kaplan,* since the declarant in *Kaplan* refused to testify at all and was held in contempt by the court. Unlike the declarant in *Kaplan,* Long testified as to the underlying facts of the robbery and murder and was not ordered by the court to testify about the prior inconsistent statements.[3]

Cheatham's remaining contention is that there was no evidence corroborating the accomplice testimony presented by the prosecution. NRS 175.291 provides that:

> A conviction shall not be had on the testimony of an accomplice unless he is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof.

NRS 175.291.

Corroboration evidence need not be found in a single fact or circumstance and can, instead, be taken from the circumstances and evidence as a whole. La Pena v. State, 92 Nev. 1, 544 P.2d 1187 (1976). Corroboration evidence also need not in itself be sufficient to establish guilt, and it will satisfy the statute if it

---

[3]Cheatham additionally contends that his due process rights were violated by the admission of Long's prior statements because the sentencing court had admonished Long that if Long failed to describe the role played by each of the participants in the crime Long would receive no "consideration" from the court. We disagree. The circumstances of the present case fail to suggest that they would reasonably have caused Long to believe that he must testify in a particular fashion. At Long's sentencing, the trial court requested only that Long give a narrative of each individual's role in the crime. The trial court neither expressly nor impliedly specified the particular form the narrative was to take.

merely tends to connect the accused to the offense. *See* State v. Hilbish, Et. Al., 59 Nev. 469, 97 P.2d 435 (1940).

An accomplice's testimony is not sufficiently corroborated merely by showing that the defendant was near the scene of the crime at the time the accomplice testified that they committed the crime in concert. Austin v. State, 87 Nev. 578, 585, 491 P.2d 724, 729 (1971). In the case before us, however, we have evidence of more than mere presence at the time and place that the accomplices say the crime was committed. We have instead a chain of events showing the constant association of Cheatham and the accomplices throughout the day that the crime was committed. Cheatham testified that he traveled to Reno from San Jose in a car with accomplices Long and Howard. He testified further that he was present with accomplices McKinnis, Long and Howard in McKinnis's hotel room, the place where the robbery and murder were committed, immediately prior to the commission of the crime. Cheatham also testified that he was with accomplices McKinnis, Long and Howard after the robbery and murder were committed. Finally, we learn from Cheatham that he had planned to hitchhike to Reno—presumably because he had no money to travel by other means—but was able to afford to check into a motel room after the robbery.

It appears that we have a fairly constant association and companionship between the three accomplices, McKinnis, Long and Howard, and Cheatham during the day that the crime was committed in McKinnis's room. We know from Cheatham that he was in the room shortly before his companions robbed and killed the victim, and we know that Cheatham was with the murderers after the criminal event. All of this is much more persuasive, much more coherent, than a mere showing that Cheatham was nearby at the time and place fixed by the accomplices for the commission of the crime. Independent evidence tells us where the crime was committed and approximately when. Cheatham's own testimony has him in the presence of the murderers at the scene of the crime immediately before the crime was committed. Cheatham is still with them after the robbery and murder, but now Cheatham has some money. All of this evidence, taken together, is "supplementary to that already given and tending to strengthen or confirm it." Black's Law Dictionary 311 (5th ed. 1979).

Were the foregoing insufficient by way of corroborating evidence, its insufficiency would be remedied by McKinnis's statement to Long in the Santa Clara jail, "Did they get Cheats?" One certainly could infer from this unguarded, thought-to-be-confidential statement by McKinnis that McKinnis expected the

police to apprehend Cheatham because Cheatham had participated in the robbery and murder of Arritt.[4] Taking the circumstances and evidence in this case as a whole, we conclude that there was sufficient corroboration evidence tending to connect Cheatham to the robbery and murder of Arritt to sustain a conviction.

Careful consideration of Cheatham's remaining contentions reveals them to be meritless. Accordingly, we affirm the judgment of conviction.

GUNDERSON, C. J., and STEFFEN, YOUNG, and MOWBRAY, JJ., concur.

---

[4]Any ambiguity that may have existed in McKinnis's statement, "Did they get Cheats?", is resolved by the statement that immediately followed it: "Did they get Melvin?" As stated earlier, Melvin Howard pleaded guilty to second degree murder. It is thus clear that McKinnis's queries as to the fates of Howard and Cheatham were identically linked to the trio's past association as accomplices in the commission of a murder.