# IN THE SUPREME COURT OF THE STATE OF NEVADA

PEYTON HEMINGWAY,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 78605

FILED

SEP 1 8 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of second-degree murder with the use of a deadly weapon, second-degree kidnapping, robbery, conspiracy to commit murder, conspiracy to commit kidnapping, and conspiracy to commit robbery.[1] Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

Appellant Peyton Hemingway, his codefendant Emilio Arenas, and a third co-conspirator Theresa Allen participated in battering, robbing, and murdering the victim. The two men stuffed the victim into a suitcase after beating him and submerged it in a bathtub. After several minutes the men removed the suitcase and placed it in Arenas' vehicle. The victim's body, still in the suitcase, was later discovered in a dumpster.

### Fair-cross-section challenge

First, Hemingway argues that the district court should have stricken the venire because it may not have been pulled in conformity with NRS 6.045(3) and thus did not represent a fair cross section of the community. A criminal defendant is entitled to "a venire selected from a

---

[1]Pursuant to NRAP 34(f)(1), we conclude that oral argument is not warranted.

20-34473

fair cross section of the community." *Williams v. State*, 121 Nev. 934, 939, 125 P.3d 627, 631 (2005). To show a prima facie violation of that right, the proponent must demonstrate that (1) the allegedly underrepresented group is distinctive in the community, (2) that group is not fairly and reasonably represented "in relation to the number of such persons in the community," and (3) the "underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* at 940, 125 P.3d at 631 (internal quotation marks and emphases omitted). To the extent Hemingway raised a fair-cross-section challenge below, he did not argue in the district court that there was an underrepresentation of a distinctive group in the community. Because Hemingway did not satisfy the first or second prongs for a fair-cross-section challenge, we decline to consider his argument on the third prong. *See Morgan v. State*, 134 Nev. 200, 208, 416 P.3d 212, 222 (2018) (providing that an appellant's failure to show underrepresentation "proves fatal" for a fair-cross-section claim and "analysis of the third prong is unnecessary"). Therefore, we conclude Hemingway was not entitled to a new venire. *See Grey v. State*, 124 Nev. 110, 117, 178 P.3d 154, 159 (2008) (providing that de novo review applies to constitutional challenges).

Hemingway also contends the district court denied him the ability to determine if the venire fairly and reasonably represented distinctive groups in the community. Before trial, Hemingway joined Arenas' request that the district court poll the prospective jurors who either marked their race as "other" or did not answer the jury questionnaire's racial and ethnic identification inquiry. Although the district court declined to poll those prospective jurors separately, it afforded Hemingway the opportunity to question them about their racial and ethnic identification, to which he declined. *See Carter v. State*, 121 Nev. 759, 769, 121 P.3d 592, 599

(2005) ("A party who participates in an alleged error is estopped from raising any objection on appeal."). Therefore, we conclude the district court did not abuse its discretion. *See Salazar v. State*, 107 Nev. 982, 985, 823 P.2d 273, 274 (1991) ("[B]oth the scope of voir dire and the method by which voir dire is pursued are within the discretion of the district court." (internal citations and quotation marks omitted)); *see also Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001) ("An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason.").

*Allen's accomplice testimony*

Next, Hemingway argues that because Allen entered into a guilty plea agreement with the State, her testimony should not have been admitted. Because he did not object to the admission of Allen's testimony below, Hemingway concedes that plain error review applies. *See* NRS 178.602 (providing the plain error standard); *see also Martinorellan v. State*, 131 Nev. 43, 49, 343 P.3d 590, 593 (2015) ("[R]eversal for plain error is only warranted if the error is readily apparent and the appellant demonstrates that the error was prejudicial to his substantial rights.").

The prosecution may enter "into an agreement with a defendant in which the defendant agrees to testify against another defendant in exchange for a plea of guilty, guilty but mentally ill or nolo contendere to a lesser charge or for a recommendation of a reduced sentence." NRS 174.061(1). "[A]ny consideration promised by the State in exchange for a witness's testimony affects only the weight accorded the testimony, and not its admissibility." *Sheriff v. Acuna*, 107 Nev. 664, 669, 819 P.2d 197, 200 (1991). And when the State offers such testimony, district courts should employ three safeguards: (1) ensure the terms of the plea agreement are fully disclosed to the jury, (2) allow the defendant to fully cross-examine the

witness concerning the plea agreement's terms, and (3) give the jury an appropriate cautionary instruction. *See id.* The record here shows that all three safeguards were followed. Further, we are unpersuaded by Hemingway's contention that the State improperly influenced Allen to conform her testimony to "a predetermined formula" or to achieve "a specified conclusion." *See* NRS 174.061(2). Rather, Allen testified that she was not told what to say and was told to tell the truth. Therefore, we discern no plain error in the admission of Allen's testimony.

Hemingway also argues that reversal is warranted because he was improperly convicted based on Allen's uncorroborated accomplice testimony. We disagree. Sufficient evidence—independent of Allen's testimony—connected Hemingway to the commission of the charged crimes, including DNA evidence, fingerprints, other physical evidence, and eyewitness testimony. *See* NRS 175.291 (prohibiting convictions based on an accomplice's testimony unless it is corroborated by other evidence that independently connects the defendant to the crime); *Cheatham v. State*, 104 Nev. 500, 504-05, 761 P.2d 419, 422 (1988) ("Corroboration evidence also need not in itself be sufficient to establish guilt, and it will satisfy the statute if it merely tends to connect the accused to the offense."); *see also Heglemeier v. State*, 111 Nev. 1244, 1250, 903 P.2d 799, 803 (1995) (providing that corroborative evidence may be direct or circumstantial). Accordingly, reversal is not warranted on this issue.[2]

_____

[2]To the extent Hemingway argues that the State negotiating a plea agreement with Allen in exchange for her testimony constitutes improper witness vouching, we conclude he did not cogently argue the issue. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (holding that it is appellant's responsibility to provide cogent argument and relevant authority).

*Sufficiency of the evidence*

Finally, Hemingway argues that insufficient evidence supports his conviction for second-degree kidnapping and the deadly weapon enhancement. We disagree. This court will uphold a conviction if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, when viewing the evidence in a light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998).

*Second-degree kidnapping conviction*

Hemingway contends that insufficient evidence supports his conviction for second-degree kidnapping because any restraint of the victim was incidental to the crime of robbery. We disagree. Eyewitness testimony and physical evidence showed that Hemingway and Arenas assaulted and robbed the victim in the kitchen area. Hemingway stated that the victim "won't die" so the two men put the victim into a suitcase and moved him to the bathroom. The suitcase was then submerged underwater in the bathtub. Given this evidence, a rational juror could have determined that putting the victim in a suitcase and moving him to the bathroom after completing the robbery "had independent significance apart from the underlying robbery." *Pascua v. State*, 122 Nev. 1001, 1005, 145 P.3d 1031, 1033 (2006). Moreover, a rational juror could have determined that moving the victim to the bathroom after completing the robbery created a risk of danger "substantially exceeding that necessarily present in the crime of robbery" or "substantially in excess of that necessary" to complete the robbery. *Mendoza v. State*, 122 Nev. 267, 275, 130 P.3d 176, 181 (2006) (holding that such increases in risks of danger support dual convictions for robbery and kidnapping). Therefore, this argument does not warrant reversal of Hemingway's kidnapping conviction.

*Deadly weapon enhancement*

Hemingway also contends that insufficient evidence supports the deadly weapon enhancement for his murder conviction. We disagree. At trial, Allen testified that Hemingway grabbed a bottle of wine and struck the victim in the head and that the victim was struck and strangled with a belt. The victim's injuries, as well as physical evidence, supported this testimony. While Hemingway argues that the medical examiner testified that the victim's injuries could have been caused by other means, this court has repeatedly held that "whenever conflicting testimony is presented, it is for the jury to determine what weight and credibility to give to that testimony." *Allen v. State*, 99 Nev. 485, 487, 665 P.2d 238, 240 (1983); *see also Harrison v. State*, 96 Nev. 347, 351, 608 P.2d 1107, 1109-10 (1980) (providing that witness "testimony regarding a weapon is sufficient to prove the deadly weapon element"); NRS 193.165 (deadly weapon enhancement). Thus, we conclude that a rational juror could find that Hemingway used a deadly weapon during the commission of the murder. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

cc:  Hon. Michelle Leavitt, District Judge
     Sandra L. Stewart
     Attorney General/Carson City
     Clark County District Attorney
     Eighth District Court Clerk