Jaturun SIRIPONGS, Petitioner–Appellant,

v.

Arthur CALDERON, in his capacity as Warden of San Quentin Prison, Respondent–Appellee.

No. 97–99003.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 1997.

Decided Jan. 9, 1998.

Linda Schilling, Latham & Watkins, Costa Mesa, California, for petitioner-appellant.

Laura Whitcomb Halgren, Deputy Attorney General, San Diego, California, for respondent-appellee.

Before: SCHROEDER, PREGERSON and FERNANDEZ, Circuit Judges.

SCHROEDER, Circuit Judge.

This death penalty case is before us for a second time on appellant Jaturun Siripongs' petition for habeas corpus. In our earlier opinion, we remanded the case for an evidentiary hearing on Siripongs' claims of ineffective assistance of counsel in both the guilt and penalty phases of his trial. On remand the district court held an eight-day evidentia-

ry hearing, made extensive oral findings of fact and entered judgment denying the writ. This appeal followed.

The factual background of the double murder and the evidence at trial are set forth fully in our first opinion. *See Siripongs v. Calderon,* 35 F.3d 1308, 1311–12 (9th Cir. 1994). Appellant is a Thai national who was convicted of murdering the owner and an employee of a neighborhood Thai market in Orange County, California. One of the victims was strangled and the other repeatedly stabbed. The evidence of appellant's guilt was strong. He was in possession of a victim's jewelry and credit cards; his hands were wounded and bleeding the afternoon following the murders; police found a bloody knife and bloodstained clothing alongside a victim's purse in a dumpster; blood found in the dumpster and at the scene of the crime was consistent with Siripongs' blood, although a serologist testified that it was a probable but not conclusive match.

Siripongs' counsel put on no witnesses during the guilt phase and called none of Siripongs' personal friends or family members during the penalty phase. Because petitioner was never granted an evidentiary hearing on his claim of ineffective assistance of counsel in either phase, and because a majority of this panel concluded on the evidence and declarations in the record that he had made a "colorable" claim of ineffective assistance, we remanded for an evidentiary hearing. *See Siripongs,* 35 F.3d at 1314 (citing *Smith v. McCormick,* 914 F.2d 1153, 1170 (9th Cir. 1990) and *Hendricks v. Vasquez,* 974 F.2d 1099, 1109–10 (9th Cir.1992)).

■ The Constitution requires that a criminal judgment be overturned based on ineffective assistance of counsel when (1) trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) the defendant was prejudiced by the deficient performance. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Although this court affords a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, 104 S.Ct. at 2065, the adversarial process will not function normally unless the defense team has done a proper investigation. *See Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305 (1986). Therefore, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. This court has accordingly evaluated an attorney's failure to investigate or produce evidence for strategic reasonableness. *See Mak v. Blodgett,* 970 F.2d 614, 618 & n. 6. Where the attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, the attorney's performance is not constitutionally deficient.

## The Accomplice Defense

■ In our earlier opinion, we reviewed declarations in the record by experts setting forth evidence supporting the claim that defense counsel was deficient in his investigation and evaluation of an accomplice defense. *See* 35 F.3d at 1312–13. Siripongs had consistently maintained to his lawyer that someone else had done the actual killing, but he would not divulge the name of the person. The expert's declaration endorsed Siripongs' position that his counsel should have conducted further investigations because the accomplice defense was the only viable one. An expert in Thai culture explained that Siripongs' reluctance to name an accomplice was "consistent with deeply embedded Thai cultural values, including cultural concepts of shame and dishonor, and with Thai religious beliefs." *Siripongs,* 35 F.3d at 1315. Counsel at trial did not develop or present any such cultural evidence.

The evidence presented at the evidentiary hearing before the district court puts these matters in a much fuller context. This evidence led the district court to hold that performance of petitioner's counsel, James Spellman, did not fall below the constitutional standard. It is now clear from the record that Spellman's rejection of the accomplice defense was deliberate and strategic, as this defense suffered from several serious flaws.

Although Siripongs maintained that he had neither killed nor intended to kill either victim, he refused to divulge the identity of his accomplice to Spellman or any member of the defense team. Spellman concluded that a jury simply would not find such a defense credible absent an identified accomplice. In light of the evidence now in the record, that conclusion appears reasonable.

Siripongs asserted in his first appeal that the jury may have found such a defense credible under the theory that Siripongs was unwilling to "snitch" on his accomplice due to Thai cultural values. However, defense counsel reasonably concluded that this theory was not very believable given the defendant's psychological evaluation and history of cooperation with law enforcement. The record now reflects that appellant was not in fact a practicing Buddhist, that he was highly critical of Thai cultural values and that he admired "the American way of life." In fact, the record shows that Siripongs had served as an informant to the Drug Enforcement Agency and was about to inform the INS of the identity of the person who had provided him with a forged green card.

The record now shows that defense counsel fully explored the possibility of putting Siripongs on the stand, even to the extent of hiring an independent expert to conduct trial cross-examination. Siripongs' presentation of his accomplice defense was not deemed credible enough for presentation to the jury, and we have no basis to fault this tactical judgment.

Although the petitioner maintains his innocence as to the murders, he admits now and admitted to his trial attorney that he was present at the scene of the crimes and intended to rob the victims. Because Siripongs was personally acquainted with the victims it thus seems unlikely that he would rob them and leave them alive to identify him. The record now shows that Spellman's team investigated the possibility that the victims were involved in illegal activity that would discourage them from reporting the crime to the police. However, this investigation yielded no evidence of illegal activity.

A final weakness in the accomplice defense was that it necessitated the concession that the defendant was present at the scene of the crime. Because there was no eyewitness to link Siripongs to the crime scene, Siripongs would thus have had to concede an important element in the prosecution's case. This contributed to the decision not to pursue the accomplice defense, which, on the basis of Spellman's investigation, was a reasonable decision.

### The Need For Further Investigation

■ Petitioner contends that a more complete investigation would have altered Spellman's calculus as to the best strategy with which to proceed. The record developed in the district court does not bear this out.

*Blood evidence*

Petitioner claims that Spellman committed a crucial error by failing to conduct an independent lab analysis of blood found at the scene of the crime and in the dumpster. However, Spellman consulted a blood expert to verify the internal consistency and surface validity of the government's lab findings. Based on these results, the defense elected not to pursue independent testing. The defense apparently decided to forego an investigation on the basis of a reasonable conclusion that the investigation would be unhelpful.

*Hair and fingerprint evidence*

Hair and fingerprint evidence found at the scene of the crime did not implicate Siripongs. The petitioner claims that Spellman made another error in failing to conduct an independent investigation of this physical evidence. This argument, however, ignores the evidence that the defense team could not match the hair or fingerprints against other possible suspects; technology at the time of the trial did not permit computerized matching against large databases of fingerprint samples. As to the unidentified hair samples, none bore Asian characteristics, and all the identified "suspected accomplices" were Asian.

*Shoeprints*

Petitioner claims that Spellman acted unreasonably in failing independently to test the shoes of Bui, a suspected accomplice.

However, the police examined Bui's shoes and found them not to be incriminating. There is no indication that independent testing was necessary or even that Bui was a likely suspect.

*Clothing found in dumpster*

Petitioner claims that Spellman erred in failing to determine the clothing sizes of potential suspects in order to link them to the shoes and jeans found in the dumpster. However, there is no indication that the police investigation of the clothing was deficient or that the defense team had not concluded that Siripongs wore the clothes himself.

*Other suspects*

Petitioner contends that Spellman unreasonably failed to investigate other suspects. However, there is no probative evidence linking any of the suggested persons—all Thai acquaintances of Siripongs—to the murders. Moreover, the record demonstrates that Spellman did investigate without success the alibi of Petitioner's roommate and other leads that might have revealed the involvement of an accomplice, if there had been one.

In sum, the relevant inquiry under *Strickland* is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable. 466 U.S. at 690, 104 S.Ct. at 2065. The evidence adduced below has shown that Spellman's investigation and ultimate decision to forego the accomplice defense at trial was reasonable.

**Penalty Phase**

■ In our earlier opinion, we were also troubled by the failure to present evidence of the accomplice defense in the penalty phase, because we could perceive no apparent tactical advantage in refraining from contending at the penalty phase that even though Siripongs was present "someone else may have been responsible for the actual murders." *Siripongs,* 35 F.3d at 1315. After the evidentiary hearing, the district court found that defense counsel made a reasonable tactical decision to capitalize on any lingering doubts about Siripongs' actual involvement in the crimes themselves and to keep from the jury any evidence that Siripongs had partici-

pated in the criminal activity. Given the lack of any supporting evidence for the accomplice defense, we cannot say that the district court's conclusion was clearly erroneous or legally flawed.

■ Also, in our earlier opinion, we were concerned by the defense team's failure to call any of Siripongs' friends and relatives, particularly his mother, who was seated in the courtroom. *See* 35 F.3d at 1312. Evidence developed at the evidentiary hearing did show that Siripongs' mother would testify that he had continued to send her money, and that Siripongs had suffered from an abusive and dysfunctional family life during his childhood. Trial counsel was deterred from introducing the mother's testimony out of fear that it could be impeached by a prior conviction in Thailand. We were earlier concerned that counsel may not adequately have investigated the conviction to learn of its nonviolent nature.

At the evidentiary hearing, however, it became apparent that defense counsel was indeed aware that the criminal conduct in Thailand was nonviolent. The district court found that Spellman had reasonably endeavored to obtain from the trial court a ruling that the prior conduct would not be admissible. However, the trial court was unwilling to provide such assurance. Petitioner notes that the validity of the conviction is questionable under our constitutional standards because it may have been uncounseled. *See People v. Coffey,* 67 Cal.2d 204, 60 Cal.Rptr. 457, 430 P.2d 15 (1967). Yet, at the time of Siripongs' trial, evidence of criminal conduct alone, independent of a conviction, was admissible in California for a wide variety of purposes at the penalty phase. *See In re Jackson,* 3 Cal.4th 578, 11 Cal.Rptr.2d 531, 835 P.2d 371, 393–94 (1992); *People v. Mitcham,* 1 Cal.4th 1027, 5 Cal.Rptr.2d 230, 824 P.2d 1277, 1308 (1992). The admissibility of conduct evidence was subsequently clarified by *People v. Rodriguez,* 42 Cal.3d 730, 230 Cal.Rptr. 667, 726 P.2d 113 (1986), but the issue was a "frequent source of uncertainty for both trial counsel and trial courts" at the time of Siripongs' trial. *Jackson,* 11 Cal. Rptr.2d 531, 835 P.2d at 394; *see also, People v. Gonzalez,* 51 Cal.3d 1179, 275 Cal.Rptr.

729, 800 P.2d 1159, 1200 (1990) (evidentiary rules "not so clear at the time of defendant's trials in 1980 and 1981"). The district court found that it was reasonable for trial counsel to decide not to risk having evidence of any prior criminal conduct come before the jury, and to leave the jury with the impression that there had never been any such conduct. There is no question on the record as it stands now that Siripongs did participate in a department store burglary in Thailand and served time in prison for it.

These facts are remarkably similar to the facts in *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987), in which defense counsel failed to present any mitigating evidence for fear of damaging cross-examination and rebuttal. In Burger, the attorney chose not to introduce the testimony of the defendant's mother. Although the mother would have testified that the defendant had an exceptionally unhappy and physically abusive childhood, she would have been subject to cross-examination on the defendant's criminal history. The record at that time did not reflect any prior criminal activity on the part of the defendant. The Supreme Court ruled that the attorney had made a "reasonable decision that his client's interests would not be served by presenting this type of evidence." *Id.* at 791, 107 S.Ct. at 3123.

Petitioner has raised the additional issue of Spellman's 1982 congressional bid, which petitioner claims interfered with his work on Siripongs' defense, and which we earlier found troublesome. *See Siripongs,* 35 F.3d at 1313. The record does not show there was any significant interference. Spellman spent a considerable amount of time preparing for both the guilt and penalty phases of the trial. The tactical decisions were reasonable.

█ Finally, we must address the contention that the district court erred in limiting the scope of the evidentiary hearing to the first prong of *Strickland,* i.e. whether counsel's performance was deficient, without considering the second prong, which is prejudice. We have previously held that it is unnecessary to consider the prejudice prong of *Strickland* if the petitioner cannot even establish incompetence under the first prong. *See Hendricks v. Calderon,* 70 F.3d 1032, 1039 (9th Cir.1995). Here, the district court's findings were limited to the issue of deficiency of performance, as, for the most part, was the evidence presented. We have carefully reviewed the record and there is no showing that appellant was prevented from submitting any evidence that might have affected the district court's decision or ours.

### Conclusion

We have thoroughly considered all of Siripongs' contentions on appeal and conclude that the evidentiary hearing did not establish ineffective assistance of counsel. The hearing was extremely helpful in bringing to light aspects of the trial bearing on the issue of defense counsel's strategic decisions. We now can conclude that the seeming lapses in the defense were in fact based on reasonable, tactical considerations. Our decision is made with the confidence that must accompany a decision that upholds a sentence of death. In cases like this, where the paucity of the defense at trial casts doubt on the performance of counsel, such confidence can often be gained only after the petitioner has received the opportunity denied him in state court to develop the factual record.

The judgment of the district court denying the writ is AFFIRMED.