161 F.3d 1185
 98 Cal. Daily Op. Serv. 8444, 98 Daily Journal
D.A.R. 11,797
Pete WILSON, Governor of the State of California, Arthur
Calderon, Warden of California State Prison at San
Quentin, Defendants-Petitioners,
v.
The UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
OF CALIFORNIA, Respondent,
Jaturun Siripongs, Real Party in Interest.
 No. 98-71334.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Nov. 16, 1998.
Decided Nov. 16, 1998.
 
 Daniel E. Lungren, Attorney General; Dane R. Gillette, Senior Assistant Attorney General, San Francisco, CA, for defendants-petitioners.
 Linda Schilling, Latham & Watkins, Costa Mesa, CA, and Michael Laurence, Sternberg, Sowards & Laurence, San Francisco, CA, for Real Party in Interest.
 Petition for Writ of Mandamus to the United States District Court for the Northern District of California; Maxine M. Chesney, District Judge, Presiding. D.C. No. C98-4417-MMC.
 Before: SCHROEDER, PREGERSON, and FERNANDEZ, Circuit Judges.
 Opinion by Judge SCHROEDER; Dissent by Judge FERNANDEZ.
 SCHROEDER, Circuit Judge:
 Before us is a petition for writ of mandamus to review the district court's grant of a Temporary Restraining Order staying appellant Jaturun Siripongs' execution scheduled for 12:01 a.m. tomorrow morning, November 17, 1998. We deny the petition.
 The facts of the underlying crime and earlier state and federal court proceedings are set forth in the published decisions of this court and the California Supreme Court. See Siripongs v. Calderon, 133 F.3d 732 (9th Cir.1998); Siripongs v. Calderon, 35 F.3d 1308 (9th Cir.1994); People v. Siripongs, 45 Cal.3d 548, 247 Cal.Rptr. 729, 754 P.2d 1306 (Cal.1988). Siripongs was convicted in 1983 of two brutal murders and sentenced to death. In his federal habeas petition, after exhaustion of state remedies, this court ordered an evidentiary hearing on his claim of ineffective assistance of counsel. Siripongs, 35 F.3d at 1323. Following that hearing and findings by the district court, we affirmed the district court's denial of habeas relief. Siripongs, 133 F.3d at 737. The Supreme Court denied certiorari on October 5, 1998. See Siripongs v. Calderon, --- U.S. ----, 119 S.Ct. 101, 142 L.Ed.2d 80 (1998).
 On October 16, 1998 the Orange County Superior Court set the date and time for execution. On October 20, Siripongs, through his counsel, informed Governor Wilson of his intent to seek clemency. A clemency hearing was held before the Board of Prison Terms on November 9, 1998. The Governor received the Board's recommendation that afternoon and issued his 12-page denial at 3:34 p.m. on Friday, November 13, 1998.
 Siripongs filed this 42 U.S.C. § 1983 action in the United States District Court for the Northern District of California at 8:30 a.m. on Monday, November 16, 1998. In it, he sought a stay of execution and entry of a court order requiring a new clemency hearing. He contended that the clemency proceeding he received violated federal principles of due process which apply to a limited degree in clemency proceedings. See Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, ---- - ----, 118 S.Ct. 1244, 1253-54, 140 L.Ed.2d 387 (1998) (O'Connor, J., concurring in part and concurring in the judgment). The district court granted a TRO, concluding that serious questions were raised as to the following:
 
 
 1
 (1) That plaintiff and his attorneys reasonably relied on defendant's description of the scope of information relevant to defendant's clemency decision:
 
 
 2
 (2) That as described in the written communication from defendants and his agents to plaintiff's counsel, the scope of information relevant to defendant's clemency decision reasonably excluded evidence that questioned plaintiff's guilt of capital murder;
 
 
 3
 (3) That as described in the written communication from defendants and his agents to plaintiff's counsel, the scope of information relevant to defendant's clemency decision reasonably included factors in mitigation including, but not limited to plaintiff's good conduct in prison, and the desires of the decedents' family members that he not be executed;
 
 
 4
 (4) That defendant's decision denying plaintiff clemency was based on the absence of any information calling into question plaintiff's culpability for capital murder;
 
 
 5
 (5) That until the defendant issued a written denial of plaintiff's clemency request, plaintiff and his counsel reasonably did not have any actual or constructive knowledge of the grounds upon which defendant intended to rely in considering plaintiff's clemency request; and(6) That if defendant had given notice to plaintiff and his counsel of the central issues to be decided in the course of the clemency proceedings, plaintiff's counsel could and would have presented substantial and credible information question petitioner's role as the actual perpetrator of the homicides in this case.
 
 
 6
 The Supreme Court has recognized that a lack of adequate notice of the issues to be considered implicates a fundamental right of due process. Lankford v. Idaho, 500 U.S. 110, 126, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991). See also Woodard, 523 U.S. at ---- - ----, 118 S.Ct. at 1253-54 (O'Connor, J. concurring in part and concurring in the judgment) (state clemency procedure subject to some minimal procedural safeguards guaranteed by due process). Siripongs' assertion that the state's communications misled his counsel about the issues to be considered in the clemency proceeding states a claim of a violation of due process.
 
 
 7
 Our review of a Temporary Restraining Order cannot be by appeal as of right, but is limited to the consideration of a petition for mandamus. See Fed.R.Civ.P. 65; Columbia Broadcasting Systems v. United States District Court, 729 F.2d 1174 (9th Cir.1984). Review of the district court in a mandamus petition is extremely narrow, to guard against subversion of the policies underlying the general rule that appellate court review is reserved for cases following final judgment. See id.; see also Harper v. United States District Court, 729 F.2d 1216, 1221 (9th Cir.1984); Bauman v. United States District Court, 557 F.2d 650 (9th Cir.1977). In Bauman we articulated the guidelines determining whether to issue the writ:
 
 
 8
 (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires....
 
 
 9
 (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal....
 
 
 10
 (3) The district court's order is clearly erroneous as a matter of law....
 
 
 11
 (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules....
 
 
 12
 (5) The District court's order raises new and important problems or issues of law of first impression....
 
 
 13
 [R]arely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable. The considerations are cumulative and proper disposition will often require a balancing of conflicting indicators.
 
 
 14
 Bauman, 557 F.2d at 654-55 (citations omitted).
 
 
 15
 In this case, because the district court has entered a Temporary Restraining Order, there is no remedy by way of appeal. See Columbia Broadcasting, 729 F.2d at 1177. The first factor is satisfied. The second, the damage to the petitioning state defendants, is questionable, however, because the only harm complained of is the inability to execute the petitioner within 5 hours of the district court's order. The district court has scheduled a full show cause hearing on issuance of a preliminary injunction for December 3, 1998, which is less than three weeks hence. That order will be fully reviewable on appeal and expedited proceedings may be requested.
 
 
 16
 The district court's order is not clearly erroneous as a matter of law, as it holds only that serious questions are raised upon the factual record before it. Similarly, the order cannot be regarded as an oft-repeated error manifesting disregard of federal rules, nor does it raise new or important problems or issues of law of first impression. The dissent's spectre of micromanagement is not borne out by the district court's order focusing on the fundamental issue of notice.
 
 
 17
 Because only one factor clearly weighs in favor of granting mandamus relief in the circumstances presented here, we conclude that the petition must be denied.
 
 
 18
 The court is mindful of the last minute nature of this proceeding. Nevertheless, the delay is not attributable to Siripongs. This is not a case like Gomez v. United States District Court, 503 U.S. 653, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992), where the inmate could have brought his claim "more than a decade ago." Id., 503 U.S. at 654, 112 S.Ct. 1652. We do not agree with the state's position that Siripongs' counsel could have notified the Governor and the Board of Prison Terms of counsel's misunderstanding before counsel received the Governor's decision. It was only when that decision was received, along with its accompanying explanation, that Siripongs had notice of the actual grounds which the Governor intended to consider. That decision was not received by the parties until after the close of normal court hours on Friday. This action was filed in the district court first thing Monday morning.
 
 
 19
 The petition for mandamus is denied.
 
 FERNANDEZ, Circuit Judge, dissenting:
 
 20
 When the State seeks a writ of mandamus, as it has here, we must determine whether the factors, or guidelines, set forth in Bauman v. United States Dist. Court, 557 F.2d 650, 654-55 (9th Cir.1977) indicate that the writ should issue. Here, they surely do. The State has no other adequate means to obtain review if the writ of execution is to be carried out, and no appeal can correct that harm. While it cannot be said that the district court's order manifests an oft-repeated error or raises especially new issues of law, the issue it raises is surely important--to what extent will federal courts begin parsing clemency decisions. Most importantly, the district court order is clearly erroneous as a matter of law because it bespeaks an expansion of court review to the point of micromanagement of the clemency process.
 
 
 21
 In point of fact, this 42 U.S.C. § 1983 case is little more than a grasp at a straw in an attempt to stop Siripongs' execution. It seeks, in effect, to inject the federal courts into a review of Governor Wilson's denial of clemency to a brutal murderer. Siripongs continues to insist that "despite the fact that his hands were cut, that clothing was found which was covered with blood which may have been his and that of a victim, that he had the stolen jewelry, that he had the victim's credit cards, and that he was trying to hide evidence," a phantom accomplice actually committed the murder, while Siripongs, himself, tried to protect the victims, who knew him. Siripongs v. Calderon, 35 F.3d 1308, 1323 (9th Cir.1994) (Fernandez, J. concurring and dissenting). I have never been overly impressed by his story, nor was the district court, nor, ultimately, was this court. See Siripongs v. Calderon, 133 F.3d 732 (9th Cir.), cert. denied, --- U.S. ----, 119 S.Ct. 101, 142 L.Ed.2d 80 (1998). Neither was the Governor.
 
 
 22
 In his attempt to induce us to review the Governor's decision, he relies upon Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998), and, in particular, upon the concurring opinion of Justice O'Connor. Id. at ----, 118 S.Ct. at 1253.
 
 
 23
 Four justices of the Court were of the opinion that clemency in that case was a matter of grace, and that, in effect, the defendant had no liberty interest which gave him the right to demand that certain procedural requirements be followed. As those justices put it, he "is already under a sentence of death, determined to have been lawfully imposed. If clemency is granted, he obtains a benefit; if it is denied, he is no worse off than he was before." Id. at ----, 118 S.Ct. at 1252. Justice O'Connor, speaking for herself and three other justices, did not accept the approach that there was no liberty interest simply because "clemency is committed to the discretion of the executive...." Id. at ----, 118 S.Ct. at 1253.[1] She opined that "some minimal procedural safeguards apply to clemency proceedings." Id. at ----, 118 S.Ct. at 1254. But she did not opt for wholesale judicial intervention in the process or for a regime in which courts would pick over each word used by the executive in denying a clemency request. Two examples of when judicial intervention might be appropriate were a coin-flip scheme or the arbitrary denial of access to the process itself. Id. at ----, 118 S.Ct. at 1254. Of course, examples are not rules, but these illustrate the severe limits that courts must put upon themselves if they hope to avoid handing another issue to defendants for their use in delaying an already lengthy (almost sempiternal) and cumbersome process still further. That would then add another string to the bow of defendants who have been able to stave off their receipt of the punishment to which they are entitled for such a long time that our civilized desire to assure something close to perfect justice is seen as uncivilized behavior by many civilized countries.
 
 
 24
 But nothing Siripongs has presented comes even close to demonstrating the kind of behavior by Governor Wilson that should invoke our intervention. Certainly the procedures used do not "shock the conscience." Woratzeck v. Arizona Bd. of Exec. Clemency, 117 F.3d 400, 404 (9th Cir.1997). First, the Constitution of California does commit clemency decisions to the essentially unfettered discretion of the Governor. See California Constitution Article 5 § 8(a) ("the Governor ... may grant a reprieve, pardon and commutation, after sentence....").
 
 
 25
 Second, the statutes of California have not imposed restrictions upon what the Governor must consider when he exercises that discretion, nor have they required any particular procedures, which he must follow. See Cal.Penal Code §§ 4800-14. The Governor "can deny the requested relief for any constitutionally permissible reason or for no reason at all." See Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 467, 101 S.Ct. 2460, 2465-66, 69 L.Ed.2d 158 (1981)(Brennan, J., concurring). Siripongs asserts that the Governor must consider his "good conduct" in prison. However, the California Code section that he cites for that proposition says no such thing. See Cal.Penal Code § 4801.
 
 
 26
 Third, Siripongs was not subjected to a coin flip, nor was he denied access to the clemency process. He had an opportunity to present his case and the Governor penned a careful, detailed decision regarding it. The best he can do is argue that, somehow, he was impeded in his ability to argue his innocence to the Governor. But the Governor's letter imposes no such limitation upon him. Thus, there is no basis for the argument that Siripongs was denied the ability to tell his side of the story by intentional or negligent misinformation from the Governor.
 
 
 27
 It is true that the Board of Prison Terms, from which the Governor asked for a report, indicated that it was not interested in information which was "duplicative of issues raised on appeal," and went on to state that this particular review "does not include re-litigation of the issues decided in the various courts." In my view, those thoughts are virtually tautological, and certainly did not prevent Siripongs from presenting any new information that he might have.[2] Even if it did, we could hardly blame the Governor if he eschewed an opportunity to retry Siripongs' case. At any rate, what Siripongs says he wanted was another opportunity to argue his unimpressive phantom accomplice story, but the Governor was well aware of that theory.
 
 
 28
 Siripongs also asserts that the Governor refused to consider the fact that he had been a model prisoner. But, as already noted, nothing in California law requires the Governor to place any weight whatever on the fact that a murderer is a nice man when he is in prison. At any rate, it is clear that the Governor did consider that fact; he was simply unmoved by it.[3]
 
 
 29
 After all is said and done, Siripongs has had a careful review of his case by numerous judges. He was found guilty beyond a reasonable doubt by a jury, which also found in favor of the death penalty. The trial judge went along with that decision. The conviction and sentence were unanimously affirmed by the California Supreme Court. See People v. Siripongs, 45 Cal.3d 548, 754 P.2d 1306, 247 Cal.Rptr. 729 (1988). Habeas corpus was denied by the district court judge and that denial was unanimously affirmed by three judges of this court. See Siripongs, 133 F.3d at 737. He was, in short, lawfully and properly found guilty of the vicious crime with which he was charged. Beyond that, as the Governor perspicaciously and pithly summed up the matter before him:
 
 
 30
 Mr. Siripongs' remorse is infrequent, his callous crimes unmitigated, his justifications nonexistent. His principal grounds for clemency--an unfortunate childhood, his good behavior while in confinement--are inadequate and could be invoked for nearly every death sentence.... Clemency is not an instrument to undo the considered judgment of the people of this State in favor of the death penalty, but to prevent a miscarriage of justice.
 
 
 31
 Siripongs has not been subjected to any injustice by the People of California, by the courts of this country, or by the Governor. His attempt to expand the Supreme Court's "minimal procedural safeguards," Woodard, 523 U.S. 272, 118 S.Ct. at 1254, 140 L.Ed.2d 387, into a minute review of clemency procedures and decisions should not be countenanced.
 
 
 32
 Therefore, I respectfully dissent.
 
 
 
 [1]
 A fifth justice agreed with that conclusion. Id. at ----, 118 S.Ct. at 1255 (Stevens, J., concurring in part and dissenting in part)
 
 
 [2]
 If Siripongs' experienced counsel had any doubts about what information the Governor would accept, they could have asked the Governor for clarification. They didn't
 
 
 [3]
 Siripongs also argues that the Governor arbitrarily frustrated his legitimate expectations in a clemency procedure by failing to consider that neither of the victims' families want Siripongs to be executed. Because the Governor did consider the position of members of the victims' families, this argument is specious