NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ERIC KIMBLE, | No.   17-99002 |
| Petitioner-Appellee, | D.C. No. 2:90-cv-04826-SVW |
| v. | |
| RONALD DAVIS, Warden, | MEMORANDUM[*] |
| Respondent-Appellant. | |

| | |
|---|---|
| ERIC KIMBLE, | No.   17-99003 |
| Petitioner-Appellant, | D.C. No. 2:90-cv-04826-SVW |
| v. | |
| RONALD DAVIS, Warden, | |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted December 12, 2022
Pasadena, California

Before:  HURWITZ, OWENS, and BENNETT, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge HURWITZ.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Eric Kimble was charged with brutally murdering Harry and Avone Margulies in their Los Angeles home, robbing Harry, raping Avone, and burglarizing their stereo store. A jury convicted Kimble of these offenses, and in 1981 sentenced him to death.[1] Almost forty years later, the district court granted 28 U.S.C. § 2254 sentencing relief on Kimble's claims that his trial counsel furnished ineffective assistance during the penalty phase by failing to investigate and present additional mitigation evidence, and that the cumulative effect of counsel's penalty-phase deficiencies was prejudicial. The State appeals.

Kimble cross-appeals. He claims: (1) the evidence was insufficient to prove rape and the rape-murder special circumstance; (2) one of the jurors was impermissibly biased due to his concealment of his son's criminal history during voir dire; and (3) the trial court failed to properly instruct the jury regarding the robbery-murder special circumstance. The district court granted a certificate of appealability ("COA") as to each of these three claims. Kimble also requests to expand the COA to include one uncertified claim: that trial counsel furnished ineffective assistance during the guilt phase. *See* 9th Cir. R. 22-1(e).

We reverse the district court's grant of penalty-phase relief and affirm as to the cross-appeal. We decline to expand the COA.

---

[1] The facts have been recited in prior legal proceedings. *See, e.g.*, *People v. Kimble*, 749 P.2d 803 (Cal. 1988). As the parties are familiar with those facts, we do not recite them in detail here.

**I. The State's Appeal (Mitigation and Cumulative Error)**

**A. Relevant Standards for Ineffective Assistance of Counsel ("IAC")**

Because Kimble's federal petition was filed before AEDPA's effective date of April 24, 1996, pre-AEDPA standards apply here. "Under pre-AEDPA standards, both questions of law and mixed questions of law and fact are subject to de novo review, which means that a federal habeas court owes no deference to a state court's resolution of such legal questions (in contrast with post-AEDPA standards)." *Clark v. Chappell*, 936 F.3d 944, 953 (9th Cir. 2019). However, "[t]o the extent it is necessary to review findings of fact made in the district court, the clearly erroneous standard applies." *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002).

An ineffective assistance of counsel claim requires a petitioner to show both that his counsel's performance was deficient and that he was prejudiced by that deficiency. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "With respect to prejudice, a petitioner must demonstrate that, 'but for counsel's unprofessional errors,' there is a 'reasonable probability' that the 'result of the proceeding would have been different.'" *Andrews v. Davis*, 944 F.3d 1092, 1108 (9th Cir. 2019) (en banc) (quoting *Strickland*, 466 U.S. at 694). "[I]t is enough to show 'a reasonable probability that at least one juror' would have recommended a

sentence of life instead of death." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 537 (2003)).

## B. Counsel's Deficient Investigation

The appropriate IAC standards at the time Kimble was tried included the principle that "penalty phase investigations in capital cases should include inquiries into social background, including investigation of any family abuse, mental impairment, physical health history, and substance abuse history." *Correll v. Ryan*, 539 F.3d 938, 941, 943 (9th Cir. 2008).[2] But Kimble's trial counsel did not do this. As the district court noted, counsel "did not conduct even a rudimentary investigation of [Kimble's] background." Such an investigation was deficient.

## C. Counsel's Presentation

We also assume without deciding that Kimble's counsel's penalty-phase presentation was deficient. Kimble's mitigation case consisted of six witnesses (family and friends) who testified that Kimble, who had been 18 at the time of the murders, was a loved and caring member of his family, and had been active in his church and his community. He had coached youth basketball for several years, and

---

[2] The district court's deficient performance analysis was not contrary to *Teague v. Lane*, 489 U.S. 288, 310 (1989), which holds that, with two exceptions not applicable here, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."

regularly babysat and acted as a "big brother" to the neighborhood children. He had also volunteered his time to help two ailing elderly neighbors by doing various errands for them.

Presenting only this type of mitigation evidence is not necessarily deficient, but deficiency depends on what else could have been presented, and what the State could have presented in rebuttal. *See, e.g.*, *Siripongs v. Calderon*, 133 F.3d 732, 736–37 (9th Cir. 1998). But because we find no prejudice, we need not decide whether counsel's presentation was deficient under *Strickland*.

### D. Prejudice

Reviewing the district court's findings of fact for clear error and mixed questions of law and fact de novo, we find that Kimble was not prejudiced by his counsel's inadequate investigation and arguably inadequate presentation because the mitigating evidence Kimble could have introduced is negligible when compared to the evidence the State would have introduced in rebuttal. *See Cullen v. Pinholster*, 563 U.S. 170, 201 (2011) (taking into account that certain mitigating evidence would have exposed the petitioner to further aggravating evidence).

Had counsel introduced evidence of Kimble's difficult childhood and, through expert testimony, various mental illnesses, the State would have

introduced evidence of Kimble's antisocial personality disorder ("ASPD"),[3] his

related behaviors,[4] and acts resulting in his prior 1978 conviction for statutory

rape.[5]  Thus, when viewed alongside the State's penalty-phase rebuttal evidence,

the penalty-phase evidence Kimble now claims he did not have the opportunity to

present as a result of his counsel's ineffectiveness was "by no means clearly

mitigating, as the jury might have concluded that [Kimble] was simply beyond

rehabilitation."  *Cullen*, 563 U.S. at 201; *see also Darden v. Wainwright*, 477 U.S.

---

[3] The operative Diagnostic and Statistical Manual of Mental Disorders in use at the time of the trial, the DSM–III, described those diagnosed with ASPD as sociopathic or psychopathic.  *See* APA, Diagnostic and Statistical Manual of Mental Disorders 428–29 (3d ed. 1980) (DSM–III).  Several of the State's experts diagnosed Kimble as having ASPD and not other mental illnesses.  One concluded: "Surveying Kimble's school records and juvenile arrest and probation records for the period of 1971 through 1978, . . . they 'reveal a pattern of belligerent, rebellious, violent and unsocialized conduct'" typical of a person with ASPD.  The district court described that same expert as testifying that he "would have advised defense counsel not to introduce mental health testimony in mitigation because it would have opened the door to potentially devastating rebuttal evidence."

[4] We accept the district court's view that this evidence would likely have been presented in the penalty phase through the testimony of both Kimble's and the State's mental health experts.

[5] The district court recognized that Kimble's 1977 arrest for rape "stands out from the long list of school misbehavior and property and drug crimes both in its seriousness and its prima facie similarity to the rape of Avone Margulies one year later."  Kimble's defense attorney would have needed to factor into the calculus of a more involved mitigation case at least the possibility that the rape evidence would have come in.  And there is, of course, no guarantee that the trial court would have ruled on that admissibility before the additional "mitigation" evidence would have come in.

168, 186 (1986) (trial counsel's failure to present any mitigating evidence was not deficient because such evidence would have opened the door to damaging rebuttal evidence); *Burger v. Kemp*, 483 U.S. 776, 793 (1987) (failure to present psychological records was not IAC because records suggested "violent tendencies" that would have undermined defense strategy of portraying petitioner as acting under the influence of other perpetrators).[6]

## II. Cross-Appeal: Insufficient Evidence of Rape

We turn next to Kimble's cross-appeal. Kimble argues that "the evidence did not establish that a [rape] had been committed, much less that [he] had committed the crime." We reject these claims and affirm the district court's determination that the evidence of rape was sufficient.

When the police found Harry and Avone's bodies, Harry was fully clothed, and Avone was naked. Her hands were tied behind her back, her eyes and mouth were covered with tape, and her clothing was found in her adult son's room, who was still living at home at the time. Evidence at trial showed that semen in

---

[6] *See also Gerlaugh v. Stewart*, 129 F.3d 1027, 1035 (9th Cir. 1997) (a diagnosis of ASPD may be "potentially more harmful to [a] petitioner than [helpful]"); *id.* (evidence of ASPD "[i]n its best possible light, it is a basket of cobras"); *Daniels v. Woodford*, 428 F.3d 1181, 1204, 1210 (9th Cir. 2005) (evidence that a capital defendant is a "sociopath" can be aggravating rather than mitigating); *Beardslee v. Woodford*, 358 F.3d 560, 583 (9th Cir. 2004) (an ASPD diagnosis can be damaging to a capital defendant).

Avone's vagina came from someone with Type A blood; both Kimble and Harry Margulies had Type A blood.[7] The medical examiner testified that Avone had engaged in sexual intercourse within six hours of her death. Although there was no visible trauma to Avone's genitals, her body had scrapes on both breasts, and there were various scrapes on Avone's shoulder, arms, abdomen, and thigh. Viewing this "evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted).

### III. Cross-Appeal: Juror Bias

Kimble next claims that the district court erred in denying Claim 14(G) of his habeas petition, regarding juror misconduct. Kimble alleges juror Earnest Bray lied about his son, Bray Jr., during voir dire. Bray Jr. was convicted of robbery; Bray knew about his son's conviction but did not disclose it when questioned. Kimble advances both an implied bias claim and bias based on Bray's dishonesty during voir dire. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

We have found "implied bias in those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such

---

[7] Though irrelevant to the sufficiency of the evidence at trial, later DNA testing confirmed that the semen was Kimble's.

that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Fields v. Brown*, 503 F.3d 755, 770 (9th Cir. 2007) (internal quotation marks and citation omitted). "Implied bias presents a mixed question of law and fact which is reviewable *de novo*." *Estrada v. Scribner*, 512 F.3d 1227, 1240 (9th Cir. 2008). *McDonough* bias occurs where "a juror failed to answer honestly a material question on *voir dire*, and . . . a correct response would have provided a valid basis for a challenge for cause." 464 U.S. at 556. The district court held that even though Bray was dishonest during voir dire, Kimble failed to show either actual or implied bias. We agree.

This case does not present an "extreme situation" of implied bias where it is "highly unlikely that the average person could remain impartial in his deliberations." *Fields*, 503 F.3d at 770. And it was not clearly erroneous for the district court to find that Bray was "reluctant, out of embarrassment," to disclose his son's crimes. *See Silva*, 279 F.3d at 835.

As to *McDonough* bias, there is nothing to support the argument that if Bray had disclosed that his son was in prison, Kimble would have had a valid challenge for cause. We affirm the district court's rejection on the merits of Claim 14(G).

## IV. Cross-Appeal: Special Circumstances

Kimble also appeals the district court's denial of Claim 19 of his habeas petition regarding the robbery-murder special circumstance. He argues that with

9

proper instructions, the jury never could have returned a verdict that resulted in a death sentence. In *People v. Green*, 609 P.2d 468 (Cal. 1980), the California Supreme Court clarified its interpretation of the felony-murder special circumstance, holding that to narrow the class of murderers eligible for the death penalty, the murder cannot be incidental to the felony alleged. *Id.* at 505. In other words, a "murder is not committed during a robbery [or other qualifying felony] within the meaning of the statute unless the accused has 'killed in cold blood in order to advance an independent felonious purpose.'" *People v. Thompson*, 611 P.2d 883, 893 (Cal. 1980) (quoting *Green*, 609 P.2d at 506).

Kimble argues, relying on *Green*, that the jury was wrongfully instructed that the robbery-murder special circumstance could be found "if the jury found that a willful, deliberate, premeditated murder occurred 'during the commission' of the" robbery. Instead, he argues the jury should have been instructed that the robbery-murder special circumstance could be returned only if the jury found that Kimble killed Harry and Avone to advance the purposes of his robbery.[8]

We review error in jury instructions for harmless error, *see Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993), and find that any error in instructing the jury was harmless. As the California Supreme Court held on direct appeal, "there was substantial evidence from which the jury could have found the . . . robberies

---

[8] Kimble appears to have abandoned the IAC aspect of this claim.

were not 'incidental' to the murders." *Kimble*, 749 P.2d at 816–17. Moreover, the fact that the jury found other special circumstances rendering Kimble eligible for the death penalty means that any error resulting from failure to give these instructions was harmless. *See Brown v. Sanders*, 546 U.S. 212, 220 (2006) ("An invalidated sentencing factor (whether an eligibility factor or not) will render the sentence unconstitutional . . . *unless* one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances.").

## V. Cross-Appeal: Guilt Phase Ineffective Assistance

Kimble also requests to expand the COA to include an uncertified claim on which we ordered supplemental briefing. He claims he was denied the effective assistance of counsel at the guilt phase of his criminal trial, Claim 10 of his habeas petition. He alleges, among other things, that his counsel failed to adequately investigate and present the supposedly viable defense that there were multiple perpetrators involved in the home-invasion crimes, which would have rebutted the requirement for imposition of the death penalty that Kimble personally committed, or physically aided the commission of, the murders.[9]

---

[9] Kimble also argues that his counsel failed to: "establish any kind of meaningful relationship with his client," "interview prosecution witnesses," "conduct any investigation into viable guilt phase defenses," "seek any relevant records," "review important records given to him by the prosecution," and "seek the assistance of co-counsel, investigators, or any kind of experts, including forensic experts or mental state experts." But as described above, IAC claims require

11

A petitioner seeking a COA "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Such a showing requires "something more than the absence of frivolity or the existence of mere good faith on [the petitioner's] part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (internal quotation marks and citation omitted). And "whatever procedures are employed at the COA stage should be consonant with the limited nature of the inquiry." *Buck v. Davis*, 580 U.S. 100, 117 (2017).

Here, the district court found that Kimble offered no admissible evidence to support his multiple perpetrator theory. We agree and therefore deny a COA on the guilt-phase IAC claim.

## VI. Conclusion

For these reasons, we reverse the district court's grant of habeas relief, and otherwise affirm. We reject Kimble's request to expand the COA.

---

prejudice, and the only prejudice Kimble alleges is counsel's failure to present evidence related to the multiple-perpetrator theory.

Kimble v. Davis, Nos. 17-99002, 17-99003

HURWITZ, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court did not err in declining to grant habeas relief as to Kimble's conviction. I respectfully dissent, however, from the majority's reversal of the district court's grant of a conditional writ as to the penalty phase. This is a pre-AEDPA case in which we need not defer to the state courts' legal conclusions. *See Clark v. Chappell*, 936 F.3d 944, 953 (9th Cir. 2019). And, the district court was plainly correct in concluding that Kimble received ineffective assistance of counsel during the penalty phase and that it was reasonably probable that this ineffective assistance prejudiced him.

The majority correctly concedes that counsel's virtually nonexistent investigation into possible mitigating evidence was deficient. The majority also assumes without deciding that counsel's performance at the penalty phase was deficient. It clearly was. Putting on *some* mitigating evidence is not enough. *See Frierson v. Woodford*, 463 F.3d 982, 987, 993–94 (9th Cir. 2006); *Bemore v. Chappell*, 788 F.3d 1151, 1159–60, 1176 (9th Cir. 2015); *Mayfield v. Woodford*, 270 F.3d 915, 928 (9th Cir. 2001) (en banc). The issue is whether counsel has presented available evidence that might reasonably lead a jury to spare the defendant's life. In making that decision, the jury has "broad latitude to consider amorphous human factors, in effect, to weigh the worth of one's life against his culpability." *Hendricks*

1

*v. Calderon*, 70 F.3d 1032, 1044 (9th Cir. 1995). And juries can reasonably conclude "that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *Karis v. Calderon*, 283 F.3d 1117, 1135 (9th Cir. 2002) (cleaned up).

Counsel presented no such evidence in the penalty phase, although it was readily available. This is a textbook case of deficient performance. Although counsel presented "humanizing" evidence to show that Kimble was generally a good person, "explanatory" evidence—offered to show why a terrible crime occurred—is typically much more persuasive. *See Mann v. Ryan*, 828 F.3d 1143, 1159 (9th Cir. 2016) ("[C]ourts generally find explanatory mitigation evidence more convincing than humanizing mitigation evidence."); *Allen v. Woodford*, 395 F.3d 979, 1006–07 (9th Cir. 2005) (explaining the difference between "humanizing" and "explanatory" mitigation); *Crittenden v. Ayers*, 624 F.3d 943, 970 n.18 (9th Cir. 2010).

The majority concludes that any deficient performance did not prejudice Kimble "because the mitigating evidence Kimble could have introduced is negligible when compared to the evidence the State would have introduced in rebuttal." Mem. Disp. at 5. As an initial matter, counsel did *not* make a tactical decision not to introduce mental health mitigation evidence to avoid the State's rebuttal. Indeed, counsel never knew about this evidence in the first place, so he could not have made

2

a reasoned decision about whether to present it. *See Elmore v. Sinclair*, 799 F.3d 1238, 1255–56 (9th Cir. 2015) (Hurwitz, J., concurring in part and concurring in the result).

More importantly, I cannot conclude that there was no reasonable probability of a different outcome if counsel had performed effectively. I do not quarrel with the majority's conclusion that, had counsel presented mental health evidence, the door would have been opened for the State to present expert testimony that Kimble had antisocial personality disorder ("APSD"). *See Atwood v. Ryan*, 870 F.3d 1033, 1063 (9th Cir. 2017). But, Kimble's habeas expert opined that he did not. And, unlike one of the prosecution's experts, the defense expert actually had examined Kimble. Even if the jury believed that Kimble had APSD, the abundance of unpresented mitigation evidence—including Kimble's age, learning disabilities, and abusive childhood—might well have persuaded at least one juror to vote for a life sentence, despite the gruesome nature of the crimes. *See Wiggins v. Smith*, 539 U.S. 510, 537 (2003).

Strikingly, even after counsel's ineffective performance, the jury took *three days* to return a penalty-phase verdict and did so only after indicating it might be deadlocked. Under these circumstances, and in the absence of deferential AEDPA review, counsel's ineffectiveness surely undermines any confidence in the outcome.

3

*See Strickland v. Washington*, 466 U.S. 668, 694 (1984).  I would therefore affirm the well-reasoned judgment of the district court.