CATHY WOODS, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 13318

March 5, 1985 696 P.2d 464

[Rehearing denied May 8, 1985]

*David Parraguirre,* Washoe County Public Defender, *Jane G. McKenna,* Deputy, *Michael B. McDonald,* Deputy, Reno, for Appellant.

*Brian McKay,* Attorney General, *Mills Lane,* District Attorney, *Edward B. Horn,* Deputy, Reno, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:

Appellant Cathy Woods was convicted of first-degree murder in the slaying of Michelle Mitchell and was sentenced to life imprisonment without the possibility of parole. Because we consider that certain evidentiary rulings of the district court precluded appellant from receiving a fair trial, we reverse her conviction.

The record reflects the following facts. On the evening of February 24, 1976, Michelle Mitchell's car broke down near the campus of the University of Nevada, Reno, and she telephoned her mother to ask for a ride home. Mitchell's mother left immediately but could not find her daughter. Mitchell's dead body was discovered a few hours later in the garage of a nearby house. Her hands were bound with twine and her throat had been slashed.

For nearly three years no charges were brought in the Mitchell killing. In March of 1979, the Reno Police Department received the information that a mental patient at the Louisiana State University Medical Center at Shreveport, Louisiana, had told

hospital staff that some years ago in Reno she had killed a girl named Michelle. The patient was appellant Cathy Woods, who had been committed to the hospital in February of 1979. Appellant told the hospital staff and subsequently Lieutenant Dennison of the Reno Police Department that she had offered to help the girl fix her car, had taken her to a garage on the pretext of getting some tools, had made a sexual proposal to her, and when rebuffed, had cut her throat. Appellant was subsequently brought to Reno and tried.

Appellant entered a plea of not guilty. The defense theory was that appellant's confession was the product of her mental illness: Mitchell had actually been killed by Tony Lima, the boyfriend of Raye Wood, to cover up the contract murder of Peggy Davis by Raye Wood and Marjorie Carter. The two women had beaten Davis to death with a hammer only a few days before Mitchell was killed.[1] Raye Wood's former jailmate, Kathy Murnighan, was ready to testify that Raye Wood had told her that she and Lima had discussed killing a woman to cover up the Davis killing by making it appear as though both murders were the work of a homicidal maniac. One night Lima told Raye Wood that he had found a girl whose car had broken down and had slashed her throat. Raye Wood and Lima together disposed of the murder weapon.

Lima was called during the offer of proof and denied having killed Mitchell. Raye Wood invoked her fifth amendment privilege against self-incrimination and refused to testify unless she was granted immunity. The State declined to seek immunity on her behalf, and Raye Wood was ruled to be unavailable. Defense counsel then sought to introduce Murnighan's testimony under NRS 51.345. The district court refused to allow Murnighan to testify because it did not consider her testimony sufficiently trustworthy to be admissible under the statute.

Initially, we note that Murnighan's proffered testimony included not only Raye Wood's statements about her own activities but also Raye Wood's narration of Lima's statements to her. Lima's statements to Raye Wood present no problem under the hearsay rule. Lima testified at the offer of proof and denied having killed Mitchell. Had he been permitted to testify at trial, his statements to Raye Wood would have been admissible as prior inconsistent statements. NRS 51.035(2)(a). However, Murnighan

---

[1]*See* Kaplan v. State, 99 Nev. 449, 663 P.2d 1190 (1983). Lima, who had been convicted of being an accessory after the fact, was out on parole by the time appellant's trial began. Wood and Carter were serving their sentences for first and second degree murder respectively.

could not testify about any of Raye Wood's statements to her—including Raye Wood's narration of Lima's statements—unless the district court admitted her testimony under NRS 51.345. We turn then to consider the admissibility of Murnighan's testimony under the statute.

NRS 51.345 provides in pertinent part:

1. A statement which at the time of its making:

. . .

(b) So far tended to subject [the declarant] to civil or criminal liability;

. . .

that a reasonable man in his position would not have made the statement unless he believed it to be true is not inadmissible under the hearsay rule if the declarant is unavailable as a witness. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Under the statute, a statement against penal interest is admissible if the declarant is unavailable at the time of the trial and if the statement was against the declarant's penal interest at the time when made. If the statement is offered to exculpate an accused, however, an additional requirement exists: corroborating circumstances must clearly indicate that the statement is trustworthy.

An examination of the record discloses that Murnighan's proffered testimony complied with all three requirements. Raye Wood, the declarant, invoked her fifth amendment privilege and thus became unavailable within the meaning of the Evidence Code. NRS 51.055(1)(a). Raye Wood's statements were clearly against her penal interest at the time when made. By admitting that she had helped dispose of the evidence of the crime, Raye Wood exposed herself to criminal liability as an accessory after the fact. NRS 195.030(1). Since Raye Wood and Lima had discussed killing a randomly chosen woman to cover up the Davis murder, Raye Wood might also have exposed herself to criminal liability for conspiracy to commit murder. NRS 199.480(1).

It was the requirement of trustworthiness, however, which preoccupied the court below. In order for a statement to be trustworthy evidence under the statute, the statement must actually have been made by the declarant and must afford a basis for believing the truth of the matter asserted. The legislative history of Rule 804(b)(3) of the Federal Rules of Evidence, on which NRS 51.345 is based, indicates that its draftsmen were particularly concerned with the possibility of fabrication. United States

v. Bagley, 537 F.2d 162, 167 (5th Cir. 1976) and the legislative history cited therein. "[O]ne senses in the decisions a distrust of evidence of confessions by third persons offered to exculpate the accused arising from suspicions of fabrication either of the fact of the making of the confession or in its contents." Notes of Advisory Committee on Proposed Rules, Fed. Rules Evid. Rule 804(b)(3), 28 U.S.C.A. at 697.

In determining whether the declarant in fact made the proffered statement, the trial court may consider the credibility of the witness. United States v. Bagley, *supra;* Laumer v. United States, 409 A.2d 190 (D.C. 1979); *contra* United States v. Atkins, 558 F.2d 133 (3rd Cir. 1977) (inquiry into trustworthiness of the declarant, not of the witness). It has been noted that a test for admissibility of hearsay statements based on the credibility of the testifying witness is unrelated to the purpose of the general rule against hearsay. United States v. Satterfield, 572 F.2d 687, 691-692 (9th Cir. 1978). This observation notwithstanding, the *Satterfield* court acknowledged that the legislative history of the rule indicates that an inquiry into whether the statements against penal interest were actually made is proper when the statements are offered to exculpate an accused and that the credibility of the witness is one of the factors the court should consider. *Id.*

The district court's primary reason for excluding Murnighan's testimony was that it did not consider her to be a credible witness. The trial judge made this determination in spite of the fact that he had presided over Raye Wood's trial at which Murnighan, as witness for the prosecution, testified about her conversations with Raye Wood. Raye Wood's statements about the Davis slaying and her statements about the Mitchell slaying were interwoven in the same series of conversations in the same surroundings during the same period of time. It is absurd to contend that Murnighan was credible when she related Raye Wood's statements about the Davis slaying but not credible when she related Raye Wood's statements about the Mitchell slaying. *Cf.* United States v. Benveniste, 564 F.2d 335 (9th Cir. 1977) (when evidence of accusatory statements admitted, error to exclude at same trial evidence of exculpatory statements made by same declarant regarding same subject matter).

We recognize that Murnighan's testimony at Raye Wood's trial was admitted under a different hearsay exception and that the Evidence Code did not require, or indeed authorize, the district court to inquire into Murnighan's credibility prior to letting her testify. However, Murnighan either was or was not a credible

witness as to her conversations with Raye Wood. The failings which were mentioned by the district court—her emotional instability, her criminal record—were equally present when she testified at Raye Wood's trial. If they were not fatal to her credibility at that trial, they should not have precluded her from telling her story to the jury at appellant's trial. The state demonstrated its belief that Murnighan was a credible witness when it put her on the stand in Raye Wood's trial. Indeed, the State demonstrated that belief when it employed Murnighan as an informant and facilitated her access to Raye Wood in prison so that Murnighan could obtain information from her. During that period of time Murnighan provided information about two murders: police officers testified that most of the verifiable information had been proved accurate. The State cannot be allowed to use Murnighan as a prosecution witness to obtain a conviction on one murder and then to claim that she is not sufficiently credible to testify regarding the same conversations as a defense witness in the trial of a third party for the second murder.

Furthermore, there is sufficient corroboration of the proffered statements to afford a basis for believing in the truth of their contents. *See* United States v. Bagley, 537 F.2d at 167. A maroon Monte Carlo was seen near the scene of the crime on the night of the murder. Lima traded in his car, a maroon Monte Carlo soon after Mitchell was killed. A footprint in the garage matched Lima's shoe size. Murnighan said that Lima lost something in the garage; a blue cigarette lighter was found on the scene. Most strikingly, Murnighan stated that Lima had said that Mitchell was having her menstrual period when he killed her. Lima was trying to excuse himself for not having stabbed Mitchell in the vagina as Davis had been stabbed, because Raye Wood berated him for not having killed Mitchell the same way that Davis had been killed. Mitchell's autopsy had disclosed that she had been having her menstrual period prior to her death. This fact was not mentioned in any of the numerous news accounts of the crime, and the State has been unable to proffer an alternative explanation of how Murnighan could have learned of it.

The inquiry into whether the proffered statement is trustworthy has led a number of courts to focus on the relationship of the declarant and the witness. Chambers v. Mississippi, 410 U.S. 284 (1973); United States v. Guillette, 547 F.2d 743 (2nd Cir. 1976); Laumer v. United States, 409 A.2d 190 (D.C. 1979). For instance, a statement against interest made to a close friend or relative is considered to be more reliable than a statement made to

a stranger. No such relationship existed between Raye Wood and Murnighan. However, Raye Wood had confessed to Murnighan that she had committed one murder. She had been convicted of that murder, and during the offer of proof she admitted that she had committed it. The fact that Raye Wood confessed to Murnighan that she had committed one murder makes it more probable that she would confess to her, during the same period of time, that she had committed another murder.

These corroborating circumstances seem to us ample to support a finding of trustworthiness under NRS 51.345. The quantum of corroboration demanded by the district court was particularly inappropriate in light of the paucity of corroboration provided by the State for appellant's confession, itself given under circumstances not conducive to reliability. *Cf.* People v. Lettrich, 108 N.E.2d 488 (Ill. 1952) (improper to exclude confession of third party on hearsay grounds when defendant's conviction rested on his repudiated confession obtained under duress.)

Additionally, we are guided by our decision in Johnstone v. State, 92 Nev. 241, 548 P.2d 1362 (1976). In *Johnstone* appellant and two companions were convicted of committing a murder in the motel where they were staying. To show that he was not even in the motel when his companions killed the victims, appellant wished to have a police officer testify regarding statements made to him by a couple staying at the motel. The couple had related that on the evening of the murder they had met *two* men asking directions to the room appellant shared with his companions. The district court, finding no applicable hearsay exception, refused to allow the testimony to come before the jury. We reversed and remanded for a new trial. We pointed out that the Evidence Code itself declares that the expressly stated hearsay exceptions are illustrative and not restrictive; the general rule is that a statement is admissible if its nature and the circumstances under which it is made offer assurances of accuracy. NRS 51.075; NRS 51.315. The couple's statements fit into just such a category and should have been admitted.

Many of the factors which we found persuasive in *Johnstone* are also present in this case. Like the couple in *Johnstone,* Murnighan was not involved in any way with appellant Cathy Woods. She had never met Tony Lima and her acquaintance with Raye Wood dated only from her time in jail. No advantage accrued to her from either the prosecution or the prison authorities for making her statements about Mitchell's murder. There is no suggestion of bias on her part or of any motive either to inculpate Raye Wood or to exculpate appellant. Indeed, at the

time that Murnighan first related Raye Wood's statements she could not have known what would aid appellant, for appellant had not yet implicated herself in the Mitchell murder.

In *Johnstone* we relied on NRS 51.315, which renders admissible statements offering strong assurances of accuracy if the declarant is unavailable. The statute declares that NRS 51.345 is illustrative of the general exception provided by NRS 51.315. The "assurances of trustworthiness" required by NRS 51.345, the more specific statute, should not be measured by a more restrictive standard than the "assurances of accuracy" necessary to fall within the general exception of NRS 51.315.

Consequently, we hold that the district court erred in not permitting Murnighan to testify before the jury regarding Raye Wood's statements. Both the contents of the statements and the circumstances surrounding their making offer persuasive assurances that Raye Wood did in fact make the statements attributed to her and that there is a basis for believing in the truth of their contents. It was for the jury to evaluate Murnighan's story and to decide how much credence it should be given. Furthermore, the district court's ruling was clearly prejudicial. Without Murnighan's testimony, appellant was unable to properly present her version of the events, without which her defense was undoubtedly "far less persuasive than it might have been." Chambers v. Mississippi, 410 U.S. at 294.

Appellant also attacks the district court's refusal to admit a set of newspaper articles concerning Mitchell's death. The State argued in its opening and closing statements that appellant's confession had contained information which only the murderer could have known. The defense wished to introduce the newspaper articles to show that all the details provided by appellant could have been gleaned from news accounts of the murder. The district court ruled that the articles were not relevant and further were inadmissible hearsay evidence.

Newspaper articles are not inadmissible under the hearsay rule if they are offered not for the truth of their contents but for the fact of their publication. United States v. Halifax County Board of Education, 314 F.Supp. 65, 75 (E.D.N.C. 1970). Nor could the articles be properly excluded as irrelevant. The determination of whether evidence is relevant lies within the sound discretion of the trial judge. Lamborn v. Phillips Pacific Chemical Co., 575 P.2d 215 (Wash. 1978). However, the record shows that the district court based its ruling on the fact that there was no

evidence that appellant, who did not testify, had read any of the news accounts. This factor need not have been determinative. Since the State argued that information provided by appellant could have been known only by the murderer, the newspaper articles could have been properly used to show that the details provided by appellant were public knowledge.

Appellant also contends that the district court improperly admitted certain testimony regarding her personal life. Since we have already concluded that appellant was prejudiced by the improper exclusion of evidence, we do not find it necessary to decide this issue. Errors, if any, that may have occurred will not necessarily recur on retrial.

Appellant was charged with a serious crime carrying a severe penalty. She was entitled to a trial at which she could defend herself against these charges. The evidentiary rulings of the district court, taken cumulatively, denied appellant a fair opportunity to present her defense. Accordingly, we are compelled to reverse appellant's conviction and to remand for a new trial.

SPRINGER, C. J., and MOWBRAY and STEFFEN, JJ., concur.