JOSEPH LOUIS MARESCA, APPELLANT, *v.*
THE STATE OF NEVADA, RESPONDENT.

No. 17674

December 31, 1987 748 P.2d 3

*Michael R. Specchio,* Reno, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, *Timothy G. Randolph,* Deputy, Washoe County, for Respondent.

## OPINION

By the Court, GUNDERSON, C. J.:

In February or March of 1981, appellant and his girlfriend moved to Nevada from Florida. On May 18, 1981, appellant applied for a job at the Airbase Inn, near the Stead Air Force Base outside Reno. Two days later he once again visited the Airbase Inn in the late evening. The following morning, at approximately 3:30 a.m., the police were dispatched to the Air-

base Inn to investigate a shooting. The victims, owners of the Airbase Inn, were Vivian and Dean Grady.

When the police arrived Vivian Grady was dead, and Dean Grady was seriously wounded, both having been shot with .38 caliber bullets. Mr. Grady informed a paramedic at the scene that "Joe" had shot him and his wife. Approximately two hours later, Grady gave the police a statement in which he provided a detailed description of "Joe."[1] Grady also stated that the couple had been robbed while they were closing out the till and counting the coins used for slot change. The police discovered that appellant, Joseph Maresca, was recently at the Airbase Inn trying to sell his personal belongings, and that he had resorted to pawning some items. Appellant's description found on the pawn shop tickets matched Grady's description of the perpetrator, and thus the investigation focused on appellant. During a subsequent lawful search of appellant's residence, the officers discovered a box containing nineteen .38 caliber bullets and over $100 in change. Three of the five bullets found at the scene of the crime spectrographically matched those in the box.

While the police were at appellant's trailer, he called by telephone to speak to his girlfriend, and spoke to an investigating officer. He was made aware that he was under suspicion, and he thereupon agreed to talk to the officers. Without keeping this promise, however, appellant immediately fled this jurisdiction by bus, and returned to Florida where he lived for five years under an assumed name. A few weeks after his flight, appellant's girlfriend also disappeared from Nevada, and lived with appellant in Florida as his wife, under an assumed name, until he was apprehended in January of 1986. Thereupon, he was tried and convicted of murder, attempted murder, and two counts of robbery with the use of a deadly weapon. He was sentenced to life without the possibility of parole for murder, plus forty consecutive years for attempted murder, and two concurrent thirty-year terms for robbery with a deadly weapon. Appellant appeals from said judgment and sentence.

On appeal, appellant contends that numerous items of evidence were lost in the years between the crime and his arrest, thereby depriving him of a fair trial.[2] We disagree. When a defendant seeks reversal upon the basis of lost evidence, he must show

[1]These two statements, and a third and fourth account by Grady, were admitted into evidence at trial.

[2]Appellant also argues that the State erred in not testing clothing for gunshot residue. We note that the clothing itself was preserved and was available for testing; however, appellant failed to conduct any tests.

either governmental bad faith, connivance, or prejudice. Rogers v. State, 101 Nev. 457, 463, 705 P.2d 664, 669 (1985). The burden of proving that it could reasonably have been anticipated that the evidence sought would be exculpatory and material rests with the defense. *Id.* at 463, 705 P.2d at 669. Appellant does not argue, nor does the record reflect, that the state acted in bad faith. Further, appellant has failed to show prejudice. The exculpatory value of the evidence in dispute is not apparent. For example, appellant argues that the lost evidence includes photographs used in a "photographic lineup." The jury saw the picture of appellant that was used in the lineup, however, and heard testimony that Grady was not able to identify appellant from the lineup.

We also see no exculpatory value in evidence of the body temperature of the deceased victim, particularly in the instant case where one victim survived the shooting. In addition, an expert witness testified that even under ideal conditions he may not have been able to determine the exact time of Vivian Grady's death. Finally, although we agree that certain police actions (e.g., throwing away the contents of a glass found at the scene and taping over a videotape of the scene) may not constitute exemplary investigative techniques, appellant has not persuaded us either of the exculpatory value of the evidence, or of any prejudice resulting from its loss. Therefore, appellant has failed to show that the absence of this evidence deprived him of a fair trial.

Second, appellant argues that the prosecutor perpetrated misconduct by commenting upon appellant's post-arrest silence when he asked appellant if it would have been easier if appellant had talked to the police on the day of the shooting rather than five years later. We are not convinced that this was a comment on appellant's silence because, even though the question may have drawn attention to the fact that appellant did not talk to the police, evidence of flight was properly before the jury. Therefore, the jury knew that appellant had not talked to the police or the prosecutor, without the question being asked. We also are not persuaded that appellant's right to remain silent was violated when the prosecutor asked appellant's girlfriend if she provided any information to the police regarding appellant's whereabouts. Fifth amendment rights are personal; therefore, questions to appellant's girlfriend could not violate his rights. Moreover, the questions have nothing to do with appellant's silence.

Third, appellant contends that the prosecutor committed misconduct by asking allegedly irrelevant prejudicial questions about

the mafia. Although we are concerned about the relevancy of the questions and the possibility of prejudice, we note that the issue has not been adequately briefed. It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court. *See* Carson v. Sheriff, 87 Nev. 357, 360-61, 487 P.2d 334, 336 (1971); Freeman v. Town of Lusk, 717 P.2d 331 (Wyo. 1986).

Finally, we note that there is overwhelming evidence of appellant's guilt. Grady stated several times that "Joe" shot him, and he gave a detailed description of his assailant which matches appellant's description. Appellant's counsel has not questioned the propriety of admitting these statements. However, they undoubtedly figured heavily in the jury's determination of guilt. While it might be argued that it was inappropriate for the district court to assume that Grady embraced a fear of dying, and thus to admit the statements as dying declarations,[3] these statements could certainly be admitted under NRS 51.315(1).[4] We have previously held that a statement could be admitted under NRS 51.315 where the persons making the statement had no involvement with the police, the defendant, or the victims; where neither the declarants nor the police had any apparent motive to lie; where the declarants were unavailable for trial; and where the statement, in its nature, was of a relatively simple kind which could be recorded with little prospect of later misinterpretation. *See* Johnstone v. State, 92 Nev. 241, 548 P.2d 1362 (1976); and *see also* Woods v. State, 101 Nev. 128, 696 P.2d 464 (1985). In the instant case, Grady had recently met appellant and did not even know his last name. There are adequate assurances of accuracy because Grady was not involved in any way with the police or appellant, and neither Grady nor the police had any demonstrable motive either to inculpate or exculpate appellant. The information conveyed was not complicated or susceptible of misinterpretation. The circumstances under which these statements were made thus provide strong indicia of accuracy. Therefore, the district court did not abuse its discretion, and the statements were properly admitted for consideration by the jury.

---

[3]NRS 51.335 states:

A statement made by a declarant while believing that his death was imminent is not inadmissable under the hearsay rule if the declarant is unavailable as a witness.

[4]NRS 51.315(1) states:

A statement is not excluded by the hearsay rule if:
(1) Its nature and the special circumstances under which it was made offer strong assurances of accuracy; and
(b) The declarant is unavailable as a witness.

674

In addition to Grady's statement, the record is replete with other evidence of appellant's guilt. For example, it is well established that although evidence of flight is not in and of itself sufficient to support a conviction, it is circumstantial evidence which can be considered with other evidence in determining guilt. *See* Edwards v. State, 90 Nev. 255, 524 P.2d 328 (1974); McGuire v. State, 86 Nev. 262, 468 P.2d 12 (1970). The jury heard testimony that appellant immediately fled after assuring the officers that he would talk to them. Thereafter, appellant remained in hiding for five years. Testimony was also presented that bullets matching those recovered from the crime scene were found in appellant's residence, along with a large amount of unaccounted for loose change. Despite having this money, it was established that, immediately prior to the crimes, appellant had been pawning and trying to sell personal property. Therefore, even if the questions regarding appellant's alleged flight from the mafia were deemed error, the error, if any, is harmless beyond a reasonable doubt. The record reflects highly substantial evidence of appellant's guilt, and we are satisfied that the conviction would have resulted even absent any error. Pasgrove v. State, 98 Nev. 434, 651 P.2d 100 (1982).

We have considered appellant's remaining contentions, and conclude they are without merit. Accordingly, we affirm the judgment of conviction and the sentence.

STEFFEN, YOUNG, SPRINGER, and MOWBRAY, JJ., concur.