133 Nev., Advance Opinion 73

IN THE SUPREME COURT OF THE STATE OF NEVADA

DONTE JOHNSON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 65168

FILED

OCT 05 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a postconviction petition for a writ of habeas corpus in a death penalty case. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

*Affirmed.*

Christopher R. Oram, Las Vegas,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steve B. Wolfson, District Attorney, and Steven S. Owens, Chief Deputy District Attorney, Clark County,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, CHERRY, C.J.:

Appellant Donte Johnson was convicted of numerous felonies including multiple counts of first-degree murder and was sentenced to death. On direct appeal, this court affirmed his convictions but reversed his death sentences and remanded with instructions for the district court

SUPREME COURT
OF
NEVADA

(O) 1947A

17-33799

to conduct a new penalty hearing. At the penalty hearing on remand, a jury returned death sentences for the murder convictions, and the district court entered a judgment of conviction setting forth the death sentences. This court affirmed that judgment on direct appeal. Within one year after remittitur issued from that decision, Johnson filed his first postconviction petition for a writ of habeas corpus in which he challenged both his convictions and the death sentences. At issue in this appeal is whether Johnson had to file a postconviction petition within one year after remittitur issued on direct appeal from his original judgment of conviction where the direct appeal resulted in reversal and remand for another penalty hearing such that his sentences were unsettled. We hold that when this court reverses a death sentence on direct appeal and remands for a new penalty hearing, there no longer is a final judgment that triggers the one-year period set forth in NRS 34.726(1) for filing a postconviction petition for a writ of habeas corpus. Johnson's petition therefore was timely filed. Because the district court entertained and denied the petition on the merits and we conclude that the district court did not err, we affirm.

## FACTS AND PROCEDURAL HISTORY

In August 1998, Johnson bound the hands and feet of four young men, robbed them, and killed them by shooting them in the head, execution style. The evidence of his guilt was overwhelming: his DNA and fingerprints were found at the crime scene, the DNA of one of the victims was found on a pair of his pants, he was in possession of the victims' property, and several witnesses testified that he confessed. After a jury trial, Johnson was convicted of four counts each of first-degree murder, first-degree kidnapping, and robbery (all with the use of a deadly weapon),

as well as one count of burglary while in possession of a firearm. The jury was unable, however, to reach an agreement as to the penalty to impose for the murders. Thus, a three-judge panel was appointed and, after a second penalty hearing, imposed death sentences for each murder.

This court affirmed Johnson's convictions on direct appeal but vacated his death sentences upon concluding that the three-judge panel procedure was unconstitutional. *Johnson v. State*, 118 Nev. 787, 799, 59 P.3d 450, 458 (2002) (*Johnson I*), *overruled on other grounds by Nunnery v. State*, 127 Nev. 749, 263 P.3d 235 (2011). After a third penalty hearing, a jury found that the State had proven the single aggravating circumstance alleged—that Johnson had been convicted of more than one murder in the proceeding—beyond a reasonable doubt, and that there were no mitigating circumstances sufficient to outweigh the aggravating circumstance. The jury unanimously imposed death sentences for each murder. This court affirmed the sentences on direct appeal from the newly entered judgment of conviction. *Johnson v. State*, 122 Nev. 1344, 1360, 148 P.3d 767, 778 (2006) (*Johnson II*).

Johnson filed a postconviction petition for a writ of habeas corpus within one year after remittitur from *Johnson II*. In his petition and supplemental petitions, he challenged counsel's performances during the trial in 2000 and the penalty hearing on remand in 2005, as well as the appeals in *Johnson I* and *Johnson II*. The State argued that the ineffective-assistance claims relating to the 2000 trial and *Johnson I* were barred pursuant to NRS 34.726(1) because they were not raised within one year after remittitur issued from *Johnson I*. After supplemental briefing and argument on the issue, the district court concluded that Johnson's judgment of conviction was not final until this court affirmed his death

sentences on direct appeal in *Johnson II*, and therefore, the one-year period in NRS 34.726(1) did not begin until remittitur issued from that decision. After an evidentiary hearing, the district court denied Johnson's claims on their merits. This appeal followed.

## DISCUSSION

### *Nevada's postconviction scheme contemplates filing one petition from a final judgment of conviction*

NRS 34.726(1) provides that a postconviction petition for a writ of habeas corpus "must be filed within 1 year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within 1 year after the appellate court . . . issues its remittitur." We have previously held that NRS 34.726(1) contemplates a final judgment to trigger the one-year period. *See Whitehead v. State*, 128 Nev. 259, 285 P.3d 1053 (2012). Johnson and the State do not dispute this, but they disagree as to when his convictions became final for the purposes of the statute. The State argues, as it did below, that because this court affirmed Johnson's convictions and only reversed his death sentences in *Johnson I*, the one-year period for challenging the convictions in a postconviction proceeding began when remittitur issued from that decision. Johnson argues that the statutory scheme envisions the filing of a single petition challenging the validity of a petitioner's convictions *and* sentences. And since the judgment of conviction was not final until the sentences for the murder convictions were settled on remand following *Johnson I*, he argues that the one-year period did not begin until remittitur issued from *Johnson II*. We conclude that Johnson's position is supported by the statute and the legislative intent behind the statutory postconviction scheme, as well as reasoned policy concerns.

While this is an issue of first impression, our decision in *Whitehead* provides some guidance. There, the sentencing court entered a judgment of conviction that set forth the sentence for each offense but indicated that restitution would be determined at a later date. 128 Nev. at 261, 285 P.3d at 1054. Months later, the court held a restitution hearing and entered an amended judgment of conviction that included the restitution amount. *Id.* The defendant did not appeal the judgment of conviction but filed a postconviction petition. *Id.* The district court denied the petition as untimely under NRS 34.726(1) because the defendant had filed the petition more than one year after entry of the original judgment of conviction. *Id.* at 261-62, 285 P.3d at 1054. This court reversed, concluding that the original judgment of conviction was not a final judgment for the purposes of NRS 34.726(1) because it imposed restitution but did not specify the amount as required by NRS 176.105(1) and therefore the original judgment was "not sufficient to trigger the one-year period under NRS 34.726 for filing a postconviction petition." *Id.* at 262-63, 285 P.3d at 1055.

This case is analogous. After this court vacated the death sentences on direct appeal in *Johnson I*, there was no judgment providing the sentences for Johnson's murder convictions as required by NRS 176.105. Because the sentences for the murders were not determined and a new judgment of conviction setting forth those sentences was not filed until after the third penalty hearing, the one-year period set forth in NRS 34.726(1) did not trigger until remittitur issued on direct appeal from the judgment of conviction entered after the new penalty hearing.

We find further support in the clear intent behind Nevada's statutory postconviction scheme. *See State Office of the Attorney Gen. v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

*Justice Court of Las Vegas Twp.*, 133 Nev., Adv. Op. 12, 392 P.3d 170, 173 (2017) (explaining that a statute's intent may be "ascertained by examining the context and language of the statute as a whole" (quoting *Karcher Firestopping v. Meadow Valley Contractors, Inc.*, 125 Nev. 111, 113, 204 P.3d 1262, 1263 (2009))). As we have explained in prior opinions, Nevada's current postconviction statutes are the result of decades of legislative efforts to craft a system that provides petitioners "one time through the system absent extraordinary circumstances" and "evinces intolerance toward perpetual filing of petitions for relief, which clogs the court system and undermines the finality of convictions." *Pellegrini v. State*, 117 Nev. 860, 875, 34 P.3d 519, 529 (2001); *see Whitehead*, 128 Nev. at 262, 285 P.3d at 1055. That intent is particularly clear in cases where the petitioner has been sentenced to death. In those cases, the Legislature had directed that "[t]he court shall inform the petitioner and the petitioner's counsel that all claims which challenge the conviction or imposition of the sentence must be joined in a single petition and that any matter not included in the petition will not be considered in a subsequent proceeding." NRS 34.820(4). While we agree with the State that we should avoid endorsing any rule that would allow criminal proceedings to linger in perpetuity, the State's position, which would require bifurcated, piecemeal postconviction litigation, would exacerbate this issue and undermine the Legislature's expressed goals in enacting the postconviction habeas provisions set forth in NRS Chapter 34.

What is more, the State's position would be unworkable in practice, particularly in capital cases. In those cases, a petitioner is entitled to the appointment of counsel in the first postconviction proceeding, NRS 34.820(1)(a), and to the effective assistance of that

Supreme Court
OF
Nevada

(O) 1947A

6

counsel, *Crump v. Warden*, 113 Nev. 293, 303, 934 P.2d 247, 253 (1997) (providing that a postconviction "petitioner who has counsel appointed by statutory mandate is entitled to effective assistance of that counsel"). But the approach urged by the State raises questions regarding whether those rules would apply to a petition challenging the validity of the petitioner's conviction where the death sentence has been vacated and there is a pending penalty hearing to determine the sentence, or whether the rules that govern noncapital cases would apply such that the district court would have discretion to appoint postconviction counsel under NRS 34.750(1) even though the petitioner might later be sentenced to death (as was the case here). As these questions suggest, accepting the State's position would introduce the type of confusion and inefficiency that the current postconviction scheme was enacted to avoid.[1]

---

[1]The cases cited by the State are not persuasive. For example, two of the cases—*People v. Kemp*, 517 P.2d 826 (Cal. 1974), and *People v. Jackson*, 429 P.2d 600 (Cal. 1967)—are distinguishable because they involve death sentences that were vacated as the result of postconviction relief proceedings, not death sentences that were reversed on direct appeal. Where a defendant has secured sentencing relief through postconviction proceedings, he or she has had the opportunity to raise guilt- and penalty-phase claims in a single postconviction proceeding. And in *Phillips v. Vasquez*, which also is procedurally distinguishable, the Ninth Circuit Court of Appeals merely held that because there had been excessive delay in imposing a new sentence after the state court vacated the defendant's death sentence on direct appeal and in reviewing the new sentence on appeal, it would allow the defendant to seek review of his conviction through a federal habeas proceeding before his sentence became final even though "jurisprudential concerns" normally would require the defendant to await the outcome of the state proceedings before seeking federal habeas relief. 56 F.3d 1030, 1033, 1035-37 (9th Cir. 1995). The court in *Phillips* did not suggest that the petitioner was *required* to seek

*continued on next page . . .*

SUPREME COURT
OF
NEVADA

(O) 1947A

In sum, we agree with the district court that Johnson's ineffective-assistance-of-counsel claims relating to his 2000 and 2005 trials and the direct appeals from those judgments of conviction were not barred by NRS 34.726(1). We therefore turn to whether the district court appropriately denied the ineffective-assistance claims, giving deference to its factual findings but reviewing its legal conclusions de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).[2]

*The district court correctly denied the claims raised in Johnson's petition*

Our focus is on the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate that counsel's performance fell below an objective standard of reasonableness (deficient performance) and a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different (prejudice). *See also Warden v. Lyons*, 100 Nev.

---

*. . . continued*

habeas review of his conviction while the state sentencing proceedings were pending.

[2]Johnson's appendix violates the Nevada Rules of Appellate Procedure in several respects: transcripts are not in chronological order, *see* NRAP 30(c)(1); it includes numerous documents that bear no rational relationship to the claims raised on appeal and contains several volumes' worth of unnecessary duplicates, *see* NRAP 30(b); several volumes exceed 250 pages, *see* NRAP 30(c)(2); and the pro se postconviction petition filed on February 13, 2008, does not appear to be included, *see* NRAP 30(b)(2). Such derelictions needlessly burden this court and its staff, cause significant confusion, and result in unnecessary delay in resolving appeals. We urge counsel to be more careful in complying with the Nevada Rules of Appellate Procedure.

 

430, 432-33, 683 P.2d 504, 505 (1984) (adopting the *Strickland* test). With respect to the prejudice prong, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The same test also applies to appellate-counsel claims, *Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1113 (1996), but with a different gloss given the natural limitations of the appellate process that force an attorney to make strategic decisions regarding which claims to argue and which to ignore, *Knox v. United States*, 400 F.3d 519, 521 (7th Cir. 2005) ("Lawyers must curtail the number of issues they present, not only because [appellate] briefs are limited in length but also because the more issues a brief presents the less attention each receives, and thin presentation may submerge or forfeit a point.").

The *Strickland* test is familiar, but certain points bear emphasis. First, an attorney is not constitutionally deficient simply because another attorney would have taken a different approach. *Strickland*, 466 U.S. at 689 ("Even the best criminal defense attorneys would not defend a particular client in the same way."). Instead, the question is whether a petitioner's counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 689; *see also Siripongs v. Calderon*, 133 F.3d 732, 736-37 (9th Cir. 1998). In the context of appellate counsel, this means that an attorney is not ineffective for omitting a particular claim—even a claim supported by existing law—to focus on claims with a better chance of success. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."); *Ford v.*

*State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989) (recognizing that "appellate counsel is most effective when she does not raise every conceivable issue on appeal"). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.").

Second, a reviewing court begins with the presumption that counsel performed effectively. *Strickland*, 466 U.S. at 689-90. To overcome this presumption, a petitioner must do more than baldly assert that his attorney could have, or should have, acted differently. *Evans v. State*, 117 Nev. 609, 647, 28 P.3d 498, 523 (2001) (explaining that this court will reject conclusory ineffective-assistance claims), *overruled on other grounds by Lisle v. State*, 131 Nev., Adv. Op. 39 n.5, 351 P.3d 725, 732 n.5 (2015). Instead, he must specifically explain how his attorney's performance was objectively unreasonable and how that deficient performance undermines confidence in the outcome of the proceeding sufficient to establish prejudice.

With these key points in mind, we turn to Johnson's ineffective-assistance claims. Those claims challenge the performance of

counsel at the 2000 trial, the 2005 penalty hearing, and both direct appeals (*Johnson I* and *Johnson II*).[3]

*Johnson failed to demonstrate that he received ineffective assistance of counsel at the 2000 jury trial or in the related appeal (Johnson I)*

Johnson argues that counsel provided ineffective assistance during his 2000 jury trial and the related appeal. We disagree.

*Jury selection*

Johnson argues that appellate counsel should have raised several challenges to the jury selection process. We conclude that he failed to show deficient performance or prejudice because, as explained below, he has not established that the omitted issues were clearly stronger than other issues raised by appellate counsel and had a reasonable probability of success on appeal.

First, he asserts that appellate counsel should have raised a fair-cross-section challenge because only 3 of the 80 veniremembers were African American, a ratio that did not adequately reflect the presence of that group in the community. But the Sixth Amendment does not demand a certain number of members of a particular race in a venire, it requires that the jury-selection process not *systematically exclude* members of a particular race. *See Williams v. State*, 121 Nev. 934, 939-40, 125 P.3d 627,

---

[3]Johnson also argues that the death penalty is unconstitutional because: (1) Nevada's death penalty scheme fails to narrow death eligibility, (2) it constitutes cruel and unusual punishment, (3) Nevada law does not afford the opportunity for executive clemency, (4) it is applied in an arbitrary and capricious manner, and (5) it violates international law. Because these claims should have been raised on direct appeal and Johnson has not demonstrated good cause to overcome the procedural default, *see* NRS 34.810(b)(2), the district court properly denied them.




631 (2005). And during voir dire, Johnson's counsel did not allege or present facts to demonstrate that the underrepresentation of African Americans in the venire was due to systematic exclusion.

Second, Johnson argues that appellate counsel should have asserted that the State violated *Batson v. Kentucky*, 476 U.S. 79 (1986), by exercising a peremptory challenge to remove a veniremember based on her race. But the prosecutor provided race-neutral reasons for the peremptory challenge, and the district court did not find them to be pretextual. Although Johnson now argues that the proffered reasons were discriminatory, trial counsel did not make those arguments—an omission that would have thwarted appellate review had appellate counsel pressed the alleged *Batson* violation. *See Hawkins v. State*, 127 Nev. 575, 578, 256 P.3d 965, 967 (2011) ("Failing to traverse an ostensibly race-neutral explanation for a peremptory challenge as pretextual in the district court stymies meaningful appellate review which, as noted, is deferential to the district court.").

Third, Johnson asserts that appellate counsel should have argued that the trial court erred by denying his for-cause challenges to veniremembers who indicated they would automatically impose the death penalty. But Johnson removed those veniremembers with peremptory challenges and has not demonstrated that the empaneled jurors were not impartial, so an appellate challenge to any error in denying the for-cause challenges would not have succeeded. *See United States v. Martinez-Salazar*, 528 U.S. 304, 316-17 (2000) (holding that no constitutional violation lies when a defendant uses a peremptory challenge to remove a juror who should have been excused for cause); *accord Blake v. State*, 121 Nev. 779, 796, 121 P.3d 567, 578 (2005). And even if the trial court's

 

actions implicated the scenario left unaddressed in *Martinez-Salazar*—the "deliberate[ ] misappli[cation of] the law in order to force the defendant[ ] to use a peremptory challenge to correct the court's error," 528 U.S. at 316—appellate counsel was not ineffective for failing to litigate a claim "based on admittedly unsettled legal questions," *Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014).[4]

Fourth, pointing to *Castillo v. State*, 114 Nev. 271, 956 P.2d 103 (1998), Johnson contends that appellate counsel should have argued that the prosecutor committed misconduct by asking whether a veniremember had the "intestinal fortitude" to issue a death verdict and arguing future dangerousness. But trial counsel did not object to the comments, and it does not appear that appellate counsel could have demonstrated plain error as the comments were made in a different context than those in *Castillo*. *See Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008) (holding that an unpreserved claim of prosecutorial misconduct does not warrant relief on appeal unless an appellant demonstrates an error that is plain from a review of the record and that the error affected his or her substantial rights).

Fifth, Johnson contends that appellate counsel should have argued that the trial court erred by denying his motion to change venue based on veniremembers' exposure to pretrial publicity. But "[e]ven where

---

[4]To the extent Johnson challenges appellate counsel's failure to raise the prosecutor's use of peremptory challenges to strike "life affirming jurors," he presents no cogent argument or authority in support of his claim, and we decline to consider it. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (recognizing that this court need not consider claims that are not supported by cogent argument or authority).

 

pretrial publicity has been pervasive, this court has upheld the denial of motions for change of venue where the jurors assured the district court during voir dire that they would be fair and impartial in their deliberations," *Floyd v. State*, 118 Nev. 156, 165, 42 P.3d 249, 255 (2002), *abrogated on other grounds by Grey v. State*, 124 Nev. 110, 118-19, 178 P.3d 154, 160-61 (2008), and Johnson points to nothing in the record suggesting that the empaneled jurors were not impartial.

None of these issues had a reasonable probability of success on appeal. And Johnson does not explain why a reasonable attorney would have raised them instead of other issues that his appellate counsel did raise. We therefore conclude that the district court did not err by denying these claims of ineffective assistance of appellate counsel.

*Unrecorded bench conferences*

Johnson contends that trial counsel should have ensured that all bench conferences were recorded or made a better record of what occurred during the unrecorded bench conferences. *See* SCR 250(5)(a). Even assuming that an objectively reasonable attorney would have taken these actions, Johnson does not explain how the result of trial would have been different but for trial counsel's performance.[5] He therefore fails to establish that counsel were ineffective, and we conclude that the district court did not err by denying this claim.

---

[5]To the extent Johnson suggests that he was prejudiced on appeal, he has not identified any issue that could not be raised or reviewed on direct appeal due to an unrecorded bench conference. *See Daniel v. State*, 119 Nev. 498, 508, 78 P.3d 890, 897 (2003).

 

*Admission of evidence*

Johnson contends that appellate counsel should have challenged various evidentiary decisions by the trial court. We conclude that he fails to show deficient performance or prejudice because, as explained below, he has not established that the issues had a reasonable probability of success on appeal and were clearly stronger than other issues raised by appellate counsel.

First, he contends that appellate counsel should have challenged the trial court's decision to admit autopsy photographs. The trial court concluded that the photographs were necessary to show the severity and manner of the wounds inflicted, and Johnson has not established that the trial court abused its discretion. *See Archanian v. State*, 122 Nev. 1019, 1031, 145 P.3d 1008, 1017 (2006).

Second, he contends that appellate counsel should have challenged the trial court's ruling precluding him from inquiring into a witness's bias. Johnson mischaracterizes the ruling: the trial court permitted him to ask the witness about issues relating to bias but instructed Johnson to not get into details about an unrelated case.

Third, he contends that appellate counsel should have argued that the trial court erroneously admitted testimony that he sold drugs. The use and sale of drugs was an integral part of this case because both parties argued that Johnson knew one of the victims because he had sold drugs to him previously. Trial counsel did not object to the drug references and, in fact, used it to support Johnson's defense.

Fourth, he contends that appellate counsel should have argued that the trial court erred by admitting a witness's testimony that he heard another witness tell the police "we knew who did it." Trial

Supreme Court
OF
Nevaoa

(O) 1947A

counsel did not object to the testimony, and therefore, appellate counsel would have been required to demonstrate plain error. *See* NRS 178.602. Appellate counsel could not have done so as it appears the comment was not offered for the truth of the matter asserted, *see* NRS 51.035 (defining hearsay), and additional testimony established that Johnson confessed in front of both witnesses.[6]

None of these issues had a reasonable probability of success on appeal. And Johnson does not explain why a reasonable attorney would have raised them instead of other issues that appellate counsel did raise. We therefore conclude that the district court did not err by denying these ineffective-assistance claims.

*Prosecutorial misconduct*

Johnson contends that appellate counsel should have argued that the prosecutor committed misconduct by vouching for the State's witnesses, commenting on facts not in evidence, making a golden rule argument, failing to disclose witness benefits, and using the term "guilt phase." Johnson fails to show deficient performance or prejudice: the prosecutor did not vouch for the State's witness or draw an improper inference from the evidence, trial counsel's objection to the golden-rule argument was sustained, the notion that the prosecutor failed to disclose

---

[6]Johnson also contends that trial and appellate counsel should have challenged the admission of evidence about an encounter between Johnson and a police officer after the murders. These claims are belied by the record with respect to trial counsel at the 2000 and 2005 trials and appellate counsel in *Johnson I*. And as to appellate counsel in *Johnson II*, Johnson has not shown deficient performance or prejudice because the district court correctly ruled that the evidence was admissible.

SUPREME COURT
OF
NEVADA

(O) 1947A

benefits lacked support in the record, and Johnson points to no authority holding that use of the term "guilt phase" constitutes misconduct.[7] Because none of these issues had a reasonable probability of success on appeal and Johnson does not explain why a reasonable attorney would have raised them instead of other issues appellate counsel raised, we conclude that the district court did not err by denying these claims.

*Kidnapping offenses*

Johnson argues that trial and appellate counsel should have challenged the kidnapping charges as incidental to the robbery charges. Johnson fails to show deficient performance or prejudice. Other than reciting the facts and holdings of several decisions by this court, he fails to explain how the kidnappings were incidental to the robberies. And since the victims were bound with duct tape, which prevented them from escaping or defending themselves, and were killed by gunshot wounds to the head, there is not a reasonable probability that trial or appellate counsel could have successfully challenged the kidnapping charges under the prevailing caselaw at the time. *See Hutchins v. State*, 110 Nev. 103, 108, 867 P.2d 1136, 1139-40 (1994). Accordingly, we conclude that the district court did not err in determining that Johnson failed to demonstrate that counsel performed deficiently.

---

[7]To the extent that the prosecutor's comments were improper, they were not so egregious "as to make the resulting conviction a denial of due process," *Bennett v. State*, 111 Nev. 1099, 1105, 901 P.2d 676, 680 (1995) (internal quotation marks omitted), and therefore a reasonable appellate attorney would have focused her attention elsewhere.

*Improper defense comments*

Johnson contends that trial counsel provided ineffective assistance by referring to the victims as "kids" during closing argument where the trial court had granted counsel's pretrial motion in limine to preclude use of the term. Johnson fails to show deficient performance or prejudice, as we have previously held that describing the victims as kids was not improper given their youth. *Johnson v. State*, 122 Nev. 1344, 1356, 148 P.3d 767, 776 (2006) (*Johnson II*). Accordingly, we conclude that the district court did not err by denying this claim.

*Jury instructions*

Johnson argues that trial and appellate counsel should have challenged certain instructions. We disagree for the reasons explained below.

First, he asserts that appellate counsel should have challenged the coconspirator liability instruction on the ground that it failed to advise the jury of the intent required to find him guilty of kidnapping. Johnson fails to show deficient performance, as he was charged with first-degree kidnapping as a principal or an aider and abettor, not as a coconspirator. Further, he does not explain why an objectively reasonable appellate attorney would have forgone some of his other appellate issues to challenge the kidnapping convictions under the circumstances.

Second, he contends that appellate counsel should have challenged the premeditation and reasonable doubt jury instructions. Johnson fails to show deficient performance. Because the instructions comported with the law, *see* NRS 175.211 (defining reasonable doubt); *Byford v. State*, 116 Nev. 215, 237, 994 P.2d 700, 714-15 (2000) (defining

SUPREME COURT
OF
NEVADA

(O) 1947A

premeditation), appellate counsel had no basis upon which to challenge them.

Third, Johnson argues that trial counsel should have offered an instruction defining express and implied malice. Even assuming that counsel were deficient, the evidence produced at trial overwhelmingly shows that Johnson was guilty of first-degree murder under the theories that the murders were willful, deliberate, and premeditated or were committed during the course of a felony. *See* NRS 200.030(1). Therefore, he fails to demonstrate a reasonable probability that the jury would have returned a different verdict had it been instructed on express and implied malice.

*Johnson failed to demonstrate that he received ineffective assistance of counsel during the 2005 penalty hearing and related appeal (Johnson II)*

Johnson argues that trial and appellate counsel were ineffective with respect to his third penalty hearing in 2005 and the appeal from the judgment of conviction entered thereafter. We disagree.

*Bifurcation of the 2005 penalty hearing*

Johnson argues that trial counsel should not have sought a bifurcated penalty hearing. He fails to show deficient performance. Trial counsel testified at the evidentiary hearing that she made a strategic decision to request a bifurcated penalty hearing. Johnson has not demonstrated that trial counsel's strategy fell below an objective standard of reasonableness. *See Lara v. State*, 120 Nev. 177, 180, 87 P.3d 528, 530 (2004) (observing that strategic decisions are "virtually unchallengeable absent extraordinary circumstances" (internal quotation marks omitted)); *see also Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). In fact, the strategy was consistent with that employed by the attorneys who

 

represented Johnson at the first penalty hearing, the only difference being that the judge presiding over the 2005 penalty hearing granted the request.[8] *See Johnson v. State*, 118 Nev. 787, 806, 59 P.3d 450, 462 (2002) (*Johnson I*). Johnson also fails to demonstrate a reasonable probability of a different outcome at the penalty hearing but for counsel's successful strategy of seeking a bifurcated penalty hearing. Accordingly, we conclude that the district court did not err by denying this claim.

### Additional mitigation evidence

Johnson argues that trial counsel conducted an inadequate investigation and should have presented additional mitigation evidence concerning fetal alcohol disorder, the results of a Positron Emission Tomography scan, and testimony from his abusive father. He fails to show deficient performance or prejudice. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The testimony at the evidentiary hearing indicated that counsel made reasonable decisions regarding which evidence to investigate and how to present the evidence deemed worthy of presentation. Johnson does not specifically identify the testimony that counsel should have presented and did not do so at the evidentiary hearing. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004) (requiring more than a bare assertion that counsel failed to uncover evidence and indicating that, to demonstrate

---

[8]Notably, appellate counsel in *Johnson I* argued that the district court erred in denying the motion to bifurcate. We disagreed, observing that this court had "never required distinct phases in capital penalty hearings." *Johnson I*, 118 Nev. at 806, 59 P.3d at 462.

prejudice, a petitioner must present the evidence that a better investigation would have revealed). Accordingly, we conclude that the district court did not err by denying this claim.

*Evidence of codefendants' sentences*

Johnson argues that trial counsel should have presented evidence that his coconspirators received lesser penalties. He fails to show deficient performance or prejudice. A reasonable attorney might have decided to forgo presenting this evidence because it would have reinforced the State's argument that Johnson deserved a more significant sentence due to his greater role in the crimes. *See Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (explaining that a court reviewing counsel's performance is required to "affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did" (internal quotation marks omitted)). For the same reason, Johnson fails to demonstrate a reasonable probability of a different outcome had the jury heard of his coconspirators' sentences. Accordingly, we conclude that the district court did not err by denying this claim.

*First penalty hearing mitigating circumstances*

Johnson argues that trial counsel should have provided the jury at his 2005 penalty hearing with all of the mitigating circumstances found by the jury at his first penalty hearing. He fails to show deficient performance or prejudice. The jurors at the 2005 penalty hearing heard evidence concerning most of the mitigating circumstances found in the first trial and were instructed that they could find "any other mitigating circumstance," even if those circumstances were not specifically listed. To the extent Johnson argues that trial counsel should have argued to the jury or sought an instruction advising the jurors of the mitigating

 

circumstances found by the previous jury, he has not shown that such an argument or instruction was proper, as it was the duty of the jurors at the 2005 penalty hearing to decide what mitigation existed and the weight to give any mitigation evidence presented. *See Kansas v. Carr*, ___ U.S. ___, ___ 136 S. Ct. 633, 642 (2016) ("Whether mitigation exists, however, is largely a judgment call (or perhaps a value call); what one juror might consider mitigating another might not."). Accordingly, we conclude that the district court did not err by denying this claim.

### *Impeachment of defense witnesses*

Johnson argues that trial counsel should not have caused the mitigation expert to prepare a report and that trial and appellate counsel should have challenged the State's use of the mitigation expert's report to impeach a defense mental health expert. He fails to show deficient performance or prejudice. Trial counsel had an obligation to make a reasonable investigation into mitigating evidence or a reasonable decision that makes a particular investigation unnecessary. *Strickland*, 466 U.S. at 691; *Wiggins v. Smith*, 539 U.S. 510, 520-23 (2003) (recognizing counsel's duty to investigate potential mitigating evidence). Trial counsel's decision in this case to employ a mitigation expert to assist in the investigation of mitigation evidence and prepare a report was not unreasonable. And Johnson has not identified any basis on which trial or appellate counsel could have successfully challenged the State's use of the mitigation report in cross-examining another defense expert, particularly as the State is entitled to explore the bases underlying an expert's opinion. *See* NRS 50.305; *Blake v. State*, 121 Nev. 779, 790, 121 P.3d 567, 574 (2005) ("It is a fundamental principle in our jurisprudence to allow an opposing party to explore and challenge through cross-examination the

SUPREME COURT
OF
NEVADA

(O) 1947A

22

basis of an expert witness's opinion."); *Singleton v. State*, 90 Nev. 216, 219, 522 P.2d 1221, 1222-23 (1974) (holding that the credibility of a source used by an expert witness in arriving at an opinion is an underlying fact properly pursued in cross-examination).[9]

Johnson next argues that appellate counsel should have challenged the prosecutor's impeachment of a defense witness by asking the witness whether he had a misdemeanor conviction. Johnson fails to show deficient performance or prejudice because the trial court alleviated any prejudice when it sustained a defense objection and instructed the jury to disregard the exchange. *See Pantano v. State*, 122 Nev. 782, 793, 138 P.3d 477, 484 (2006) (holding that improper statements by prosecutor were harmless beyond a reasonable doubt because "the district court sustained the defense's objection and instructed the jury to disregard the statements, which supplied [the defendant] with an adequate remedy"); *Miller v. State*, 121 Nev. 92, 99, 110 P.3d 53, 58 (2005) ("[I]nstruct[ing] the jury to disregard improper statements, thus remed[ies] any potential for prejudice.").

*Disagreement between trial counsel*

Johnson complains that counsel contradicted each other in closing argument regarding the presence of drugs in prison. While it would have been better for counsel to have settled on a unified strategy before making their arguments, Johnson has not demonstrated deficient

---

[9]To the extent Johnson argues that the trial court erred by permitting the State to use the report in its cross-examination of the defense expert, that claim was appropriate for direct appeal, and Johnson has not articulated good cause for raising it for the first time in his postconviction petition. *See* NRS 34.810(1)(b)(2).

 

performance under the circumstances, as counsel explained at the evidentiary hearing that she sought to preserve the defense's credibility in front of the jury by challenging her co-counsel's statement on this relatively minor point. Moreover, Johnson has not shown prejudice considering the unlikelihood that a more consistent argument on this point would have changed the outcome of the penalty hearing. Accordingly, we conclude that the district court did not err by denying this claim.

### Jury instruction

Johnson argues that trial counsel should have requested an instruction advising the jury that a mitigating circumstance may be found by one juror. Johnson fails to show deficient performance or prejudice. The jurors were instructed that they "need not find mitigating circumstances unanimously," and other instructions, as well as the special verdict forms, made it clear that the mitigating circumstances could be found by one or more of the jurors. Considering the instructions as a whole and the special verdict forms, trial counsel's failure to seek an additional instruction did not fall below an objective standard of reasonableness. And, as there appears to be no reasonable probability that the jurors did not understand that they could each make an individual determination as to whether a mitigating circumstance existed, there is no reasonable probability of a different outcome at the penalty hearing but for counsel's failure to request an additional instruction. *See Boyde v. California*, 494 U.S. 370, 380-81 (1990) (explaining that where the claim is that an "instruction is ambiguous and therefore subject to an erroneous interpretation," the inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way

that prevents the consideration of constitutionally relevant evidence" with a "commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting"). Accordingly, we conclude that the district court did not err by denying this claim.

Having determined that Johnson is not entitled to relief, we affirm the order of the district court.[10]

_____, C.J.
Cherry

We concur:

_____, J.
Douglas

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Stiglich

_____

[10]We reject Johnson's assertion that relief is warranted under a cumulative-error analysis.

